904 So.2d 1207 (2004)
Christopher D. JENKINS, Adam Robertson and Shelia Robertson, Appellants,
v.
MISSISSIPPI DEPARTMENT OF TRANSPORTATION, Oktibbeha County and A.L. Goodman, Appellees.
No. 2002-CA-01467-COA.
Court of Appeals of Mississippi.
November 9, 2004.
*1208 Shirley C. Byers, Jackson, attorney for appellants.
Katherine S. Kerby, Ronald L. Roberts, Berkley N. Huskison, Columbus, attorneys for appellees.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Aggrieved by the trial court's grant of summary judgment Christopher Jenkins, Adam Robertson, and Shelia Robertson appeal and assert the following assignments of error, which we quote verbatim.
I. Whether the Circuit Court erred in granting summary judgment in favor of the Mississippi Department of Transportation.
II. Whether the Circuit Court erred in granting summary judgment in favor of the [sic] Oktibbeha County and A.L. Goodman.
Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. Shortly after midnight on May 24, 1999, Christopher Jenkins and his brother, Adam Robertson, were traveling in their mother's vehicle from West Point to Starkville on Old West Point Road in Oktibbeha County, Mississippi. Jenkins was the driver of the car, and Robertson was the only passenger. A car traveling in the opposite direction signaled them to stop, and informed Jenkins that he should slow down because of a problem in the road ahead. For approximately one quarter of a mile, Jenkins drove about thirty-five miles per hour, but he was unable to see that the road covering a culvert had collapsed. Consequently, Jenkins drove the car into the crevice, injuring Robertson, and causing damage to the vehicle.
¶ 3. Both Jenkins and his brother testified that approximately three hours earlier, they had traveled along the same road on the way from Starkville to West Point and had not noticed a problem with the road or culvert. Jenkins also testified that *1209 he had traveled the road many times in the months preceding the accident and had never noticed a problem in the road or the culvert.
¶ 4. Subsequently, the two brothers and their mother, Sheila Robertson, the owner of the vehicle, filed a complaint in the Circuit Court of Oktibbeha County, against the Mississippi Department of Transportation (MDOT), Oktibbeha County, and A.L. Goodman, the Oktibbeha County Engineer. The complaint alleged that the culvert was negligently constructed, maintained and inspected, and sought damages for physical injuries, pain and suffering, and lost wages, as well as compensation for damage to the vehicle. MDOT, Oktibbeha County, and Goodman filed motions for summary judgment. On July 25, 2002, the trial court granted the defendants' motions for summary judgment. The trial court held that MDOT owed no duty of care to the plaintiffs because the road was not a designated state highway and in the alternative, that MDOT was entitled to exemption from liability under the Mississippi Tort Claims Act, Mississippi Code Annotated § 11-46-9(1)(d), (g), (q), and (v). The trial court also granted summary judgment in favor of Oktibbeha County and Goodman, holding the actions, or inactions, of Oktibbeha County and A.L. Goodman were discretionary, and thus immune from liability under the Mississippi Tort Claims Act and alternatively, that the plaintiffs failed to show the county and Goodman acted negligently.

ISSUES AND ANALYSIS

I.
Whether the Circuit Court erred in granting summary judgment in favor of the Mississippi Department of Transportation.
¶ 5. Jenkins, et al., assert that the trial court erred in granting summary judgment. Jenkins argues that even though Old West Point Road is not designated as a state highway under Mississippi Code Annotated Section 65-3-3 (Rev.2003), it is designated as a state aid road, and since the Office of State Aid Road Construction is a subdivision of MDOT, that MDOT, through its subdivision, had a duty to properly inspect Old West Point Road. He contends that MDOT knew or should have known the condition of the culvert in light of its March 1999 inspection. Furthermore, Jenkins asserts that MDOT is not immune under the Mississippi Torts Claims Act exemptions because the State Aid Engineer had a statutory ministerial duty to conduct a proper annual inspection of Old West Point Road, which included the culvert.
¶ 6. This Court's standard of review for a motion for summary judgment is well-settled, and is stated as follows:
This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on *1210 the moving party. That is, the non-movant should be given the benefit of the doubt.
Williamson ex rel. Williamson v. Keith, 786 So.2d 390, 393 (¶ 10) (Miss.2001).
¶ 7. We look to both the Mississippi Constitution and the statutes enacted thereafter by the Mississippi Legislature to determine whether MDOT, through the Office of State Aid Road Construction, has the duty to maintain roads designated as "state aid roads." The authority vested in the legislature for the construction and maintenance of Mississippi's roadways comes from the Mississippi Constitution Article 6, § 170 (1924), which states, in part:
The board of supervisors shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and perform such other duties as may be required by law; provided, however, that the legislature may have the power to designate certain highways as "state highways," and place such highways under the control and supervision of the state highway commission, for construction and maintenance.
Pursuant to Mississippi Code Annotated Section 65-3-3 (Rev.2003) the legislature has designated specific roads as state highways. The legislature also established the Mississippi Department of Transportation to oversee the construction and maintenance of these designated state highways. Miss.Code Ann. § 65-1-2(c) (Rev.2001). Within MDOT the legislature established the Office of State Aid Road Construction which is specifically addressed in Mississippi Code Annotated Section 65-9-5 (Rev. 2001). The Office of State Aid Road Construction oversees the funding of state aid roads, which are defined by statute as:
[A] group or class of roads composing the main collector and distributor routes feeding into local trade areas or into the state highway network, which are not designated as state highways by the Legislature, and particularly those essential to the conservation and development of natural resources, of economic and social value, and encouraging desirable land utilization, having in addition the following characteristics, to wit: roads . . . which (a) [c]onnect communities within the individual counties and with those of adjoining counties and/or which also connect the state highway system to form a complete network of secondary or collector routes.
Miss.Code Ann. § 65-9-1 (Rev.2001). The duty to maintain state aid roads is delegated to the boards of supervisors in their respective counties. Miss.Code Ann. § 65-9-25 (Rev.2001). Mississippi Code Annotated Section 65-9-25 addresses the duty of the State Aid Engineer concerning the maintenance of state aid roads:
It shall be the duty of the state aid engineer and his assistants to make annual maintenance inspections of completed projects, and such other periodic maintenance inspections as the state aid engineer shall deem necessary. If essential maintenance is not properly and regularly carried on, in the opinion of the state aid engineer, then notice thereof shall be given in writing to the board in default, and if such maintenance is not done and continued within sixty (60) days from date of such notice, then, and in such event, the state aid engineer may proceed to have done the necessary maintenance and repair work on such road and charge the same to any funds in the state aid road fund in the state treasury allocated to such county. If such failure to maintain continues, then such county shall be no longer eligible for state aid until proper maintenance is *1211 resumed by it, and notice of such withdrawal of state aid shall be duly given the state auditor and state treasurer . . .
Miss.Code Ann. § 65-9-25.
¶ 8. The Office of State Aid Road Construction, through its officer, the State Aid Engineer, is responsible for inspecting state aid roads annually to determine if the county has properly maintained such roads and in the event that the county has not sufficiently maintained the road, the State Aid Engineer is authorized to (1) give notice to the county, (2) make necessary repairs and charge the county for those repairs, and (3) withhold future state aid monies if the county continues to fail in maintaining the road. Therefore, MDOT, through its subdivision of the Office of State Aid Road Construction and its State Aid Engineer, has the authority to inspect, repair, and supervise the maintenance of state aid roads. However, the only duty delineated in the statutes is the duty to make an annual inspection of completed roads to determine if the state will continue to give money to the county to maintain the road, which the record indicates was conducted on Old West Point Road in March of 1999.
¶ 9. Jenkins asserts that MDOT did not use ordinary care in its annual inspection in March of 1999, and claims that a proper inspection would have prevented this accident that occurred only three months later in May 1999. However, Jenkins does not produce any evidence that indicates that the inspection was improper. The wooden culvert that collapsed in the cause sub judice was not mentioned in the March 1999, annual report by the state aid engineer, although several other maintenance problems were delineated on Old West Point Road. However, Jenkins's expert witness, Derrick Barrentine, a licensed engineer, opined that the culvert was in disrepair during the time of the inspection. Yet, Barrentine's affidavit does not cite to any particular standard or inspection procedure that the State Aid Engineer failed to perform. Instead, he inferred that the failure to make mention of the culvert was indicative of a negligent inspection. Simply not including the culvert in the March 1999, annual report of Old West Point Road does not equate to negligence by MDOT. Jenkins was obligated to produce sufficient evidence to establish the existence of a disputed material fact. Jenkins failed to produce sufficient evidence to establish that the March 1999 inspection was negligently performed. Absent the existence of a disputed material fact, summary judgment was proper, and there is no merit to this issue.

II.

Whether the Circuit Court erred in granting summary judgment in favor of the [sic] Oktibbeha County and A.L. Goodman.
¶ 10. Jenkins asserts that the trial court erred in granting summary judgment because Oktibbeha County and the county engineer, A.L. Goodman, breached their discretionary duty to use ordinary care in the inspection and maintenance of Old West Point Road. As with the previous issue, Jenkins offers the affidavit of expert witness Derrick Barrentine in support of his contention that the trial court erred.
¶ 11. Mississippi Code Annotated Section 11-46-9(d) (Rev.2002), grants immunity to governmental entities for failure to perform discretionary duties, and Mississippi Code Annotated Section 11-46-9(v) (Rev.2002), provides immunity for injuries arising from a dangerous condition on governmental property "that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental *1212 entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against. . . ." Moreover, "mere proof of a defective condition in the streets, no matter how dangerous, is not sufficient to show breach of the City's duty to maintain its streets safely." City of Jackson v. Locklar, 431 So.2d 475, 479-80 (Miss.1983). "A would-be plaintiff must go further and show that the City had actual or constructive knowledge of the defect." Id. at 480.
¶ 12. Jenkins attempts to use the affidavit of his expert to infer that the county had notice that the culvert would collapse (1) because it was wooden, (2) due to its location in the proximity to one, possibly two, retention ponds with minimal storage capacity for rainfall, and (3) because banking of the roadway in the curve carried surface run-off to the upstream end of the culvert, and subjected the culvert to being washed out. However, the affidavit does not address the cause of the wash out on the night of the accident in question, nor does it provide any proof that the culvert was not properly maintained. Neither of the inspection reports, that of the state aid engineer or of the county, indicated a problem with the culvert. Barrentine used the omission of the culvert from the March 1999 annual report by the state aid engineer, to infer that the county was negligent in its inspections because it was his opinion that the culvert was in disrepair a few months prior to the time of the accident. Inference of notice is not actual or constructive notice to the county or Goodman. Jenkins offered no proof as to the knowledge or notice by the county or Goodman pertaining to the condition of the culvert prior to the accident. In his deposition, Jenkins admitted that he did not notice a problem in the road when he traversed it only hours before the accident. He offered no evidence that would indicate when the culvert washed out, or when the county had or should have had knowledge of the road's condition. He also offered no evidence that the county, during its inspections, should have been aware of a defective condition. Jenkins failed to establish that the county or Goodman negligently inspected and maintained the culvert, and therefore Jenkins failed, to establish that either party had notice of the condition of the culvert, accordingly, summary judgment in favor Oktibbeha County and Goodman was appropriate, and there is no merit to this issue.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.