938 So.2d 270 (2006)
Carrie LADNER, Appellant
v.
STONE COUNTY, Mississippi, Mississippi State Aid Road Construction and Mississippi State Aid Engineer Floyd Kirk, Appellees.
No. 2004-CA-00999-COA.
Court of Appeals of Mississippi.
January 17, 2006.
Rehearing Denied June 6, 2006.
*272 Albert Lionel Necaise, Gulfport, attorney for appellant.
Robert O. Allen, Brookhaven, William L. McDonough, Jr., Gulfport, attorneys for appellees.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. The Kirby Creek Bridge over Old Highway 26 in Stone County collapsed. Carrie Ladner suffered severe injuries when she drove over the bridge, because she could not see the collapsed portion and stop her vehicle in time. Ladner sued Stone County, State Aid Road Construction, and State Aid Engineer Floyd Kirk for her injuries. She alleged negligence, failure to properly maintain the bridge, failure to inspect, and failure to warn. Circuit Judge Jerry O. Terry, Sr., presided over the bench trial. After Ladner put on her case-in-chief, the defendants moved for a directed verdict. Judge Terry granted the motion.
¶ 2. Ladner appeals claiming the court erred in holding the defendants immune and finding that the defendants were not negligent. We find no evidence that either State Aid Road Construction or the State Aid Engineer was negligent, and we affirm the dismissal as to these defendants. However, we find that Stone County was not immune and that Ladner satisfied her prima facie case against Stone County. Accordingly, we reverse and remand for trial on the merits against Stone County.

FACTS
¶ 3. Kirby Creek Bridge, on Old Highway 26, is a concrete roadway supported by wooden beams. Old Highway 26 is a State Aid road. Thus, Old Highway 26 qualifies for funding from the State Aid division of the Mississippi State Highway Commission, now known as the Mississippi Department of Transportation.
¶ 4. Since at least 1995, Stone County, State Aid and the State Aid Engineer were all aware that the bridge's wooden beams were rotting and deteriorating. At least twice a year, from 1995 through 1999, the County was made aware of the bridge's deteriorating condition, either through the engineer's report or through the Board's on site inspection of the bridge. With each inspection, the engineer's report noted that the deterioration was advancing. Despite these reports, the Stone County road manager never inspected this bridge. Indeed, each of the defendants were aware that a majority of the wooden support beams were rotten and that some were being crushed by the weight of the roadway.
¶ 5. In 1998, Stone County posted a sign that lowered the weight limit of the bridge from 10,000 pounds to 6,000 pounds. The lower weight sign notwithstanding, the County was aware that school buses, weighing approximately 30,000 pounds, and logging trucks, weighing approximately 80,000 pounds, continued to travel over *273 the bridge. The traffic count over the bridge was 585 cars daily.
¶ 6. In February of 1999, the State Aid Engineer told Stone County and State Aid that failure of the bridge was imminent. Although other bridges in the county needed various repairs, this bridge was the only one which the State Aid Engineer listed as in danger of imminent failure. He recommended, as he had in years previous, to replace the bridge with a concrete bridge.
¶ 7. None of the defendants ever recommended that the bridge be closed. On May 26, 1999, one of the rotten pilings finally collapsed and caused the middle of the bridge to collapse into a deep "V" shape.
¶ 8. Carrie Ladner lives in Steep Hollow, Pearl River County, Mississippi. On May 26, 1999, Ladner was traveling Old Highway 26 on her way to work at Stone County Hospital in Wiggins. A little before seven that morning, Ladner passed a school bus as both were traveling in the same direction, toward the bridge. When Ladner arrived at the bridge, she did not see the collapsed portion and began to cross over the bridge. It was too late. Her car went airborne and crashed on the opposite side of the bridge on Old Highway 26.

STANDARD OF REVIEW
¶ 9. We begin by noting that the proper motion was not one for a directed verdict. Instead, in a bench trial, the proper motion to make at the close of plaintiff's case-in-chief is a motion for involuntary dismissal under Rule 41(b) of the Mississippi Rules of Civil Procedure. Partlow v. McDonald, 877 So.2d 414, 416(¶ 7) (Miss.Ct.App.2003). Rule 50(a) directed verdicts are reserved only for jury trials. Id. This distinction must be understood, because the standard of review for a dismissal is different than that for a directed verdict. Id.
¶ 10. Our consideration of this appeal will be based on the correct Rule 41(b) standard of review. Id. In considering a motion for involuntary dismissal under Rule 41(b), the trial court should consider "the evidence fairly, as distinguished from in the light most favorable to the plaintiff," and the judge should dismiss the case if it would find for the defendant. Century 21 Deep S. Props., Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992). We must apply the substantial evidence/manifest error standard to an appeal of a grant or denial of a motion to dismiss pursuant to M.R.C.P. 41(b). Id. Where there arguably is evidence that a party might be entitled to a judgment, the court errs in dismissing the case. Aronson v. Univ. of Miss., 828 So.2d 752, 756(¶ 14) (Miss.2002). We defer to findings of fact and review legal conclusions de novo. Id. at 755(¶ 12).

ANALYSIS
¶ 11. The trial court held that Ladner did suffer personal injuries as a direct result of the collapse of the Kirby Creek Bridge. However, the court held all defendants were protected by discretionary function immunity set out in Mississippi Code Annotated Section 11-46-9(d)(1972). Alternatively, the court held that the defendants were not negligent in the bridge's collapse, because there was no evidence to show what the defendants should have done differently.
¶ 12. Ladner argues discretionary function immunity does not apply when the duty is imposed by law. She also claims that someone must first make a decision and exercise judgment for the discretionary function immunity to apply. Ladner also contends that the defendants were negligent in that they failed to properly *274 maintain Kirby Creek Bridge in a safe condition, they negligently repaired the bridge, they failed to properly inspect the bridge, and they failed to warn her of a dangerous condition.

I. Did the trial court err in dismissing the State Aid defendants?
¶ 13. The duty to maintain State Aid roads and bridges is delegated to the boards of supervisors in their respective counties. Miss.Code Ann. § 65-9-25 (Rev. 2001). While the State Aid office has the authority to maintain and repair roads, it is not duty bound to do so. Jenkins v. Miss. Dep't of Transportation, 904 So.2d 1207, 1211(¶ 8) (Miss.Ct.App.2004). To maintain a negligence cause of action, plaintiff must prove duty, breach, causation and damages. Since the State Aid defendants did not have a duty to repair or maintain the bridge, Ladner could not maintain a negligence action against them for breach of this duty. Accordingly, the trial court was correct to dismiss the failure to maintain and negligent repair counts against the State Aid defendants.
¶ 14. The State Aid defendants did have an affirmative duty to inspect State Aid bridges, such as the Kirby Creek Bridge. Id. However, Ladner put on no evidence that proved that the State Aid defendants negligently performed this function. Therefore, we affirm the dismissal of Ladner's claim for failure to inspect the bridge against the State Aid defendants.
¶ 15. Ladner's final claim was that the State Aid defendants had a duty to warn or otherwise protect her against the danger of Kirby Creek Bridge's collapse, because it was a dangerous condition of which it had actual notice. To state a cause of action under the dangerous condition exemption of the Mississippi Tort Claims Act ("MTCA"), a plaintiff must show: (1) a dangerous condition, (2) on the government entity's property, (3) which the government entity caused, or of which it had notice and time to protect or warn against, and (4) the condition was not open and obvious. Miss.Code Ann. § 11-46-9(v) (Rev.2002). See Lowery v. Harrison County Bd. of Supervisors, 891 So.2d 264, 267(¶ 12) (Miss.Ct.App.2004). Ladner's claim fails on the second element. There was no dispute that Kirby Creek Bridge was a county road, not a state highway. Therefore, she cannot maintain a dangerous condition cause of action against the State Aid defendants.
¶ 16. Because Ladner failed to prove that the State Aid defendants were negligent, it is not necessary for us to determine whether the State Aid defendants were immune. Therefore, we affirm the trial court's dismissal of the State Aid defendants under Rule 41(b) of the Mississippi Rules of Civil Procedure.

II. Did the trial court err in dismissing Stone County?

A. Is Stone County protected by discretionary function immunity?
¶ 17. The MTCA provides that a governmental entity is immune from a tort suit "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss.Code Ann. § 11-46-9(d) (Rev.2002). "Governmental entity" includes counties within the State. Miss. Code Ann. § 11-46-1(g) and (i) (Supp. 2004). To be immune, the discretionary act must involve an element of choice or judgment, and the choice must involve social, economic or political policy. Jones v. Miss. Dep't of Transportation, 744 So.2d 256, 260(¶ 10) (Miss.1999).
¶ 18. Furthermore, Mississippi has adopted federal courts' interpretation of *275 discretionary function immunity. L.W. v. McComb Sep. Mun. Sch. Dist., 754 So.2d 1136, 1143(¶ 28) (Miss.1999); Jones, 744 So.2d at 263-64(¶ 23); Miss. Dep't of Transportation v. Trosclair, 851 So.2d 408, 416(¶ 23) (Miss.Ct.App.2003). Specifically, this interpretation comes from Wright v. United States, in which it was held:
The discretionary function exemption is intended to protect public policy objectives. It would run counter to the discretionary function exemption to second-guess or micro-manage the kinds of steps appropriate to maximize safety in government facilities, even where the decisions are made below the policy level. Within that broad discretion, reasonable steps of a type determined by management to minimize risks of personal injury are necessary. Failure to take any such steps where feasible is negligent and not within the discretionary function exemption, even though the particular nature of the appropriate steps is discretionary.

866 F.Supp. 804, 806 (S.D.N.Y.1994) (citations omitted) (emphasis added).
¶ 19. The gist of Ladner's claim is that Stone County knew Kirby Creek Bridge was defective and dangerous, but the failure to correct the problem caused the bridge to collapse and injure her. Ladner further put on evidence that the steps needed to protect her against this dangerous condition were feasible with respect to money and time. For example, there was evidence that it only took the county one month to repair the bridge after it collapsed. The county had been on notice for five years that the bridge needed repair. Additionally, the county was aware, in February of 1999, that the bridge was in danger of imminent collapse. The bridge did not collapse until May 19, 1999, giving the county adequate time to have repaired the bridge before the collapse. There was evidence that the county had approximately 1.2 million dollars in State Aid funds, and even if it repaired all the roads and bridges that it needed to repair, they would have only cost it one million dollars. Therefore, the county had more than enough money to fix Kirby Creek Bridge, without jeopardizing funds for other road and bridge projects. Therefore, Stone County is not immune from its duty to properly maintain and repair Kirby Creek Bridge and its duty to warn of a dangerous condition.
¶ 20. Additionally, we find this case falls under L.W. v. McComb Separate Municipal School District. L.W. provides that where a duty is imposed by law, that duty must be performed with ordinary care. 754 So.2d at 1142(¶ 25). The statutory duty at issue in L.W. was the duty of the schools to "hold students to strict account" for disorderly conduct. Id. Even though discretion could technically be said to determine what amount of discipline to use, this was not enough to render it a discretionary function. Id. at 1141(¶ 24). Therefore, under Section 11-46-9(b), ordinary care was the standard to be used in carrying out this statutory duty. Id. at 1142(¶ 25).
¶ 21. Just as in L.W., here the duty was imposed by statute. Stone County was under the statutory duty to "properly maintain" and to inspect State Aid roads such as Kirby Creek Bridge. Miss.Code Ann. §§ 65-7-117 and 65-9-25 (Rev.2001). The county had the constitutional duty to "perform such other duties as may be required by law." Miss. Const. Art. 6, § 170. Like the statutory duty at issue in L.W., these duties may be said to involve discretion. Nevertheless, even though these duties may involve some degree of discretion on the part of Stone County, this is not enough to convert them into discretionary functions. The statutory duty *276 trumps the discretionary function immunity. L.W., 754 So.2d at 1142(¶ 27). Therefore, Stone County is not immune from its duty to properly maintain, inspect, and perform such other duties as may be required by law, with respect to Kirby Creek Bridge.
¶ 22. We also note the case law that provides that maintenance and repair of roads are discretionary functions. Mohundro v. Alcorn County, 675 So.2d 848, 854 (Miss.1996). However, the court's analysis in Mohundro was based on a statute which makes the counties "overseers" of their roads. Id. at 853. Mohundro did not take into account the statutory duties at issue here. If a duty is imposed by statute, it is not a discretionary function. L.W., 754 So.2d at 1142(¶ 27) (quoting Mosby v. Moore, 716 So.2d 551, 557-58(¶ 32) (Miss.1998)). Mohundro is further distinguishable from the present case, because the court held there was no evidence that the county was negligent in its construction of the culvert at issue. 675 So.2d at 854.
¶ 23. For these reasons, we reverse the trial court's finding of discretionary function immunity.

B. Did the trial court err in holding Stone County was not negligent?
¶ 24. The MTCA gives immunity only if the government performs its statutory duties with ordinary care. Miss.Code Ann. § 11-46-9(b) (Rev.2002). See L.W., 754 So.2d at 1142(¶ 25). There was testimony that the county road manager was the person from the county charged with the duty of maintaining and repairing roads and bridges. He testified that he never went to inspect Kirby Creek Bridge, despite the reports from the engineer. He then testified he did not recommend the bridge for repair, because it did not seem warranted to him. This was despite the fact that he was told failure was imminent.
¶ 25. Further, the evidence showed that the county had actual notice, twice a year for five years that Kirby Creek Bridge was advancing in decay. The engineer consistently advised the Board to repair the bridge or to replace it with a standard concrete bridge. Witnesses for the county testified that it considers the engineer to be an expert and that it had no reason to doubt his recommendation. Ample testimony was that the county had the money and the time to either fix or close the bridge.
¶ 26. For years the county did nothing except post a lowered weight limit sign on the bridge and splice the pilings. A witness for the county testified that when he read that Kirby Creek Bridge was in danger of imminent failure, he knew the bridge was going to collapse. Despite the fact that Kirby Creek Bridge was the only bridge listed in this condition in February 1999, the county decided to repair another bridge, which they were doing at the time of Kirby Creek Bridge's collapse. Stone County cannot be said to have exercised ordinary care when it in fact failed to perform its statutory duty to properly maintain the bridge.
¶ 27. Moreover, the uncontroverted evidence was that (1) the rotting bridge was a dangerous condition, (2) on county property, (3) exacerbated by the county's negligence, (4) of which the county had actual notice and time to correct or warn against, and (5) which was not open and obvious to Ladner. It was undisputed that the county had more than enough time and money to replace Kirby Creek Bridge with a standard concrete bridge, per the engineer's recommendations.
¶ 28. To state a cause of action under the dangerous condition exemption of the MTCA, a plaintiff must show (1) a dangerous condition, (2) on the government entity's *277 property, (3) which the government entity caused, or of which it had notice and time to protect or warn against, and (4) the condition was not open and obvious. Miss.Code Ann. § 11-46-9(v) (Rev.2002). See Lowery, 891 So.2d at 267(¶ 12). Here, the Plaintiff satisfied her prima facie case of failure to properly maintain and repair the bridge, or in the alternative to warn against its dangers.
¶ 29. As for the failure to inspect count against Stone County, there was evidence offered for and against this claim. The Board and the engineer did make the required inspections. No evidence implied that they performed this negligently. However, the county road manager testified that he never inspected the bridge despite the numerous reports from the engineer that the bridge was in ever worsening condition and in need of repair. A former county board member testified that the county road manager had a duty to inspect, repair and maintain the roads. Considering the evidence fairly, we find the county may be liable for its road manager's failure to inspect Kirby Creek Bridge at all.
¶ 30. We hold that Ladner has satisfied her prima facie case on all counts. It was error for the trial court to hold that Stone County was not negligent. Therefore, we reverse the dismissal of the case against Stone County.
¶ 31. By raising a Rule 41(b) motion to dismiss, a defendant does not waive its right to put on its case-in-chief, should the motion be denied. Miss. R. Civ. P. 41(b). Therefore the proper remedy is to remand the case so the trial may continue, and Stone County may have the opportunity to present its defense. Aronson, 828 So.2d at 756(¶ 14).

CONCLUSION
¶ 32. We affirm in part and reverse and remand in part. We affirm the lower court's dismissal of the State Aid defendants. We reverse the dismissal of Stone County and remand the case for further proceedings consistent with this opinion.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF STONE COUNTY DISMISSING THE ACTION IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN APPELLANT AND APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, CONCUR. ROBERTS, J., NOT PARTICIPATING.