GRIFFIS, P.J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 38. Here, the majority affirms a judgment that concludes a parcel of property is ownerless and awards a monetary judgment against no one. I find that there are fundamental errors in the chancellor's judgment that require we reverse and remand this case for a new trial. I therefore respectfully dissent from the decision to affirm the chancellor's judgment. I do however concur, although for different reasons, with the majority's decision to reverse and remand the chancellor's final judgment on the award of statutory damages.
 

 I. Appropriate Standard of Review
 

 ¶ 39. The majority does not identify an applicable standard of review. Appellate courts must always begin with the standard of review, which guides the court's analysis. There is no legal basis for this Court to examine the record and then only declare that we agree with the chancellor.
 

 ¶ 40. The chancellor made expressly clear, in both the February 2, 2016 judgment and the May 23, 2016 final judgment, that he granted Chambliss's motion for an involuntary dismissal. This decision determines the applicable standard of review.
 

 ¶ 41. At the close of Orcutt's case-in-chief, Chambliss's attorney then made a motion for a directed verdict. The chancellor did not rule; rather, he took it under advisement. The trial continued, and Chambliss offered his case-in-chief, which consisted of the defense to Orcutt's claims and his claim for adverse possession. At the end of the trial, the chancellor again took the case under advisement.
 

 ¶ 42. Six months later, on February 2, 2016, the chancellor entered a thirty-three-page "Judgment" that ruled:
 

 IT IS THEREFORE ADJUDGED, DECREED AND ORDERED that the
 

 defendant's motion for an involuntary dismissal regarding the tax sale and resulting tax deed is granted.
 

 The tax deed is hereby set aside.
 

 IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the plaintiff has failed to prove by clear and convincing evidence that he adversely possessed the subject property. Therefore, the plaintiff[']s Complaint to Quite [sic] and Confirm Tax Title is denied.
 

 IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the parties shall file briefs regarding the issue of statutory damages within thirty (30) days of the date of the entry of this Judgment.
 

 (Emphasis added). This was not a "final" judgment because the chancellor ordered supplemental briefing.
 

 ¶ 43. After supplemental briefs were received, the chancellor entered a "Final Judgment" on May 23, 2016, that ruled:
 

 IT IS THEREFORE ADJUDGED, DECREED AND ORDERED that the
 

 defendant's motion for an involuntary dismissal regarding the tax sale and resulting tax deed is granted
 

 . The tax deed is hereby set aside.
 

 IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the plaintiff has failed to prove by clear and convincing evidence that he adversely possessed the subject property. Therefore, the plaintiff[']s Complaint to Quite [sic] and Confirm Tax Title is denied.
 

 IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie Orcutt $5,151.56 plus interest thereon as discussed herein. Said amount shall be paid within ninety (90) days of the entry of this Final Judgment.
 

 IT IS FURTHER ADJUDGED, DECREED AND ORDERED that Eddie Orcutt retains a lien on the subject property in the amount of $5,151.56 plus interest thereon as discussed herein. If that amount, plus interest, is not paid within ninety (90) days of the entry of this Final Judgment, Orcutt may pursue the remedies available to him pursuant to Section 27-45-27 of the Mississippi Code.
 

 IT IS FURTHER ADJUDGED, DECREED AND ORDERED that the Chancery Clerk of Jefferson County, Mississippi is hereby authorized and directed to record a certified copy of this Final Judgment and a certified copy of the Judgment, entered in this matter on February 22, 2016, in the land records of said county and to make a marginal notation on the Tax Deed herein to evidence the cancellation and referencing the recording information for this Final Judgment.
 

 (Emphasis added). In both judgments, the chancellor expressly stated that he granted Chambliss's motion for an involuntary dismissal.
 

 ¶ 44. In
 
 Ladner v. Stone County
 
 ,
 
 938 So.2d 270
 
 , 273 (¶¶ 9-10) (Miss. Ct. App. 2006), this Court held:
 

 We begin by noting that the proper motion was not one for a directed verdict. Instead, in a bench trial, the proper motion to make at the close of plaintiff's case-in-chief is a motion for involuntary dismissal under Rule 41(b) of the Mississippi Rules of Civil Procedure. Rule 50(a) directed verdicts are reserved only for jury trials. This distinction must be understood, because the standard of review for a dismissal is different than that for a directed verdict.
 

 Our consideration of this appeal will be based on the correct Rule 41(b) standard of review. In considering a motion for involuntary dismissal under Rule 41(b), the trial court should consider "the evidence fairly, as distinguished from in the light most favorable to the plaintiff," and the judge should dismiss the case if it would find for the defendant. We must apply the substantial evidence/manifest error standard to an appeal of a grant or denial of a motion to dismiss pursuant to [ Rule] 41(b). Where there arguably is evidence that a party might be entitled to a judgment, the court errs in dismissing the case. We defer to findings of fact and review legal conclusions de novo.
 

 (Internal citations omitted).
 

 ¶ 45. The majority does not address the fact that the chancellor granted the motion for an involuntary dismissal. Rule 41(b) provides in relevant part:
 

 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court may then render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.
 

 The only remedy for a Rule 41(b) motion for an involuntary dismissal is to "dismiss" the plaintiff's complaint. In a bench trial, the judge considers whether the plaintiff is entitled to a judgment based on the evidence presented by the plaintiff. If the
 evidence does not entitle the plaintiff to a judgment, the chancellor may then grant the involuntary "dismissal."
 

 ¶ 46. Rule 41(b) does not anticipate that the judge will take the motion under advisement and later render a final judgment that both grants and denies certain claims asserted by the plaintiff. In my opinion, the judge should
 
 never
 
 take a Rule 41(b) motion for an involuntary dismissal or a Rule 50(a) motion for a directed verdict under advisement; such motion should be ruled upon before the case proceeds. The purpose for these rules is to allow a procedure for the early termination of the case based on the lack of evidence by the plaintiff.
 

 ¶ 47. It was a fundamental procedural error for the chancellor to take Chambliss's Rule 41(b) motion for an involuntary dismissal under advisement, to later grant the motion, and then award any relief other than the dismissal of Orcutt's complaint. There is certainly no authority that would allow the chancellor to grant the Rule 41(b) involuntary dismissal and then award the plaintiff damages.
 
 [3]
 

 II. Chambliss Disavows Ownership or Any Rights to the Property
 

 ¶ 48. Next, the majority does not address the portion of the final judgment where the chancellor found that Chambliss disavowed his ownership or any rights to the property. The majority does not address this issue either.
 

 ¶ 49. Orcutt's first issue challenged the chancellor's rulings that recognized Chambliss's standing to contest Orcutt's tax sale and deed. Orcutt argues that Chambliss did not have standing and relies on Chambliss's pleading where he disavowed ownership of the property.
 

 ¶ 50. At trial, Chambliss testified that he owned the property, that he did not receive notice of the tax sale, and that he had met the elements of adverse possession. The chancellor did not rule on Chambliss's counterclaim for adverse possession.
 
 [4]
 

 ¶ 51. In the February 2, 2016 judgment, the chancellor determined that Orcutt failed to prove the tax sale was valid because Chambliss was not given notice of the sale or expiration of the redemption period. Because he was the owner, the chancellor found "it is undisputed that Charlie Chambliss never received proper notice of the tax sale." Based in part on this finding, the chancellor decided to grant Chambliss's motion for an involuntary dismissal.
 

 ¶ 52. In the May 23, 2016 final judgment, the chancellor found:
 

 Throughout these proceedings-until his most recent submission-Chambliss has asserted that he is the record owner of the subject property .... This Court has not, and cannot, perform a title search; however, from the evidence received in these proceedings, it appears that Chambliss is the record owner of the subject property.
 

 The chancellor continued:
 

 [O]n April 13, 2016, Chambliss submitted Charlie Chambliss' Response to Mr.
 Orcutt's Motion for the Assessment of Statutory Damages.
 

 This Court is baffled by much of what is included in this document. Chambliss, for the first time, attempts to argue that he is not the owner of the subject property. Chambliss asserts that a decree signed by a chancellor in another matter "extinguished any interest Mr. Chambliss may have had in the property."
 

 He asserts that
 
 he "has no interest in the property at issue in case.
 
 " [sic].
 
 Id.
 
 p. 2.
 
 He states that this Court established that Chambliss has no interest in the property at issue in this case. Id. He also now argues that he had no standing to bring his counterclaim
 
 .
 

 This Court did not find anything of the sort.... As stated above, this Court has not performed, and cannot perform, a title search; however, from the evidence received in these proceedings, it appears that Chambliss is the record owner of the subject property.
 

 Chambliss agrees that the "owner-redeemer" owes the tax sale purchaser statutory damages .... He confesses that Orcutt is entitled to statutory damages, however, he disputes the amount submitted by Orcutt.
 

 (Emphasis added; internal citations omitted). Then, on page 28 of the final judgment, the chancellor held:
 

 Orcutt did what this Court hopes all property owners would do-timely pay their taxes. Without the payment of taxes, the government would cease to function. Pursuant to the instructions in
 
 Rebuild Am., [Inc.]LLC[] v. McGee
 
 , [
 
 49 So.3d 156
 
 , 160 (¶ 12) (Miss. Ct. App. 2010) ] ..., this Court had to "(1) calculate the amount of statutory damages and (2) order the [owner] to pay [the purchaser] that amount."
 

 Id.
 

 at 160
 
 . This Court finds that, applying the version of Section 27-45-3 in effect at the time of each tax sale, the amount of statutory damages is $5,151.56. Interest, at the rates discussed above, shall continue to accrue until said sum is paid.
 

 The true owner of the subject property, whether that is Chambliss or someone else, is hereby ordered to pay that amount to Orcutt within ninety days of the entry of this Final Judgment
 

 .
 

 Pursuant to Section 27-45-27 of the Mississippi Code, "a tax-sale purchaser retains a lien on the property in the event that the sale is declared 'illegal on some other ground.' "
 
 Sass Muni-V, LLC[ v. DeSoto County]
 
 ,
 
 170 So.3d 441
 
 , 447 (¶ 21) (Miss. 2015) (quoting
 
 Miss. Code Ann. § 27-45
 
 - 27(1) (Rev. 2010)). In
 
 High Sierra Tax Sale Properties, LLC[ v. Daley]
 
 , [
 
 188 So.3d 1224
 
 , 1229-30 (¶ 18) (Miss. Ct. App. 2015) ], the Court of Appeals agreed with the tax purchasers that "[t]o the extent the tax deeds and sales are set aside, the interest of [the tax sale purchaser] continues to be a lien on the subject property until all redemption amounts are paid to [the tax sale purchaser]."
 

 Id.
 

 at [1229]4. The tax sale in this matter was declared void by this Court in the February 22nd Judgment. Orcutt retains a lien on the subject property in the amount of $5,151.56 plus interest as discussed herein. If that amount, plus interest, is not paid within ninety days of the entry of this Final Judgment, Orcutt may pursue the remedies available to him pursuant to Section 27-45-27 of the Mississippi Code.
 

 ....
 

 IT IS FURTHER ADJUDGED, DECREED AND ORDERED that
 

 the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie Orcutt
 

 $5,151.56 plus interest thereon as discussed herein. Said
 amount shall be paid within ninety (90) days of the entry of this Final Judgment.
 

 (Emphasis added).
 

 ¶ 53. Like the chancellor, I too find Chambliss's disavowance of ownership to be "baffling." I also find the chancellor's ruling to be equally "baffling," and reversible error.
 

 ¶ 54. As discussed above, we should start with the standard of review. The only way this Court can affirm the chancellor is if we find that the chancellor's ruling was not based on a Rule 41(b) involuntary dismissal but instead was a final decision on the merits, which is directly contrary to the express statement of the chancellor. Nevertheless, despite this minor problem, "[a]n appellate court will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, [the decision] was manifestly wrong [or] clearly erroneous, or [the chancellor] applied an erroneous legal standard."
 
 Jones v. Graphia
 
 ,
 
 95 So.3d 751
 
 , 753 (¶ 6) (Miss. Ct. App. 2012). However, questions of law are reviewed de novo.
 

 Id.
 

 ¶ 55. The chancellor's "Judgment" and "Final Judgment" are internally inconsistent. In one part, the chancellor finds that the tax sale was void because Chambliss was the owner and he did not receive notice. Yet, in another part, the chancellor determines that Orcutt is entitled to statutory damages, and orders that "the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie Orcutt ...." If Chambliss was not the "true owner of the property" then he is not entitled to notice of the tax sale.
 

 ¶ 56. Chambliss was the only person to answer the complaint and challenge Orcutt's title. Thus, as to anyone else, Orcutt was entitled to a default judgment that confirmed his title. As to Chambliss, the chancellor had the dispute before him whether Chambliss or Orcutt owned the property. Once Chambliss disavowed ownership of the property, he no longer had standing to contest Orcutt's ownership.
 

 ¶ 57. I find that the chancellor was manifestly wrong and clearly erroneous to order "that the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie Orcutt $5,151.56." In this finding, the chancellor doubted Chambliss's ownership and right to the property.
 

 ¶ 58. Nevertheless, the chancellor repeatedly stated that Orcutt has an ownership interest in the property through the tax sale and the resulting tax deed. Orcutt sought to establish his ownership once and for all by filing his complaint to quiet title and confirm tax title. Orcutt properly filed his lawsuit and served Chambliss with process, along with "any and all other persons claiming a legal or equitable interest in the property."
 

 ¶ 59. I find that the chancellor committed reversible error in the final judgment. If Chambliss was the owner of the property and was entitled to notice of the tax sale, then he owes Orcutt the amount of statutory damages. If Chambliss does not own the property, he has no standing to challenge Orcutt's petition, and Orcutt would be entitled to an order that quieted and confirmed his title to the property. For these reasons, I would reverse the chancellor's judgment and remand this case for a new trial.
 

 III. Statutory Damages
 

 ¶ 60. I concur with the majority's finding to reverse the chancellor in part and remand for a recalculation of statutory damages.
 

 ¶ 61. The chancellor made this finding to award Orcutt statutory damages:
 

 As a court of equity, this Court recognizes that since the subject tax deed has been set aside, Mr. Orcutt may be entitled to statutory damages.
 
 See e.g.
 
 ,
 
 Miss. Code Ann. §§ 27-45-3
 
 ; 27-45-27. In
 
 McGee
 
 , the Court of Appeals affirmed a chancellor's judgment setting aside a tax sale.
 
 McGee
 
 ,
 
 49 So.3d at 160
 
 [ (¶ 9) ]. Since the chancellor in that matter failed to address the purchaser's statutory right to damages, the matter was remanded to the chancery court to "(1) calculate the amount of statutory damages and (2) order the [owners] to pay [the purchaser] that amount."
 

 Id.
 

 (citing
 
 Lawrence v. Rankin
 
 ,
 
 870 So.2d 673
 
 , 676-77 (¶¶ 19-22) (Miss. Ct. App. 2004) );
 
 Rebuild Am., Inc. v. Wright
 
 ,
 
 27 So.3d 1202
 
 , 1205 [ (]¶ 14) (Miss. Ct. App. 2010) ).
 

 ¶ 62. The chancellor correctly noted that there were two statutes that justify the award of statutory damages to Orcutt: Mississippi Code Annotated sections 27-45-3 and 27-45-27, and both were amended in 1995. The chancellor began his review of statutory damages with this finding:
 

 Calculating the damages due to Orcutt is a far more complex issue than originally anticipated. This issue has presented numerous dilemmas and this Court has not found much guidance. This is particularly so since several issues appear to be matters of first impression before the appellate courts of Mississippi and this Court has found conflicting authority for other issues. The issues before this Court include: What version of the statutes apply? What is the amount of taxes? What is the interest rate? Should the Court calculate simple interest or compound interest? Because this case involves matters of first impression, this Court will rule conservatively. The result seems unfair to Orcutt[,] who did what society hopes all citizens will do: timely pay taxes. But this Court's hands are tied. The appellate courts or the Legislature may want to consider creating a remedy which would make citizens like Orcutt whole.
 

 ¶ 63. The chancellor reviewed section 27-45-3, as amended, effective March 27, 1995:
 

 The owner ... or any person interested in the land sold for taxes, may redeem the same ... at any time within two (2) years after the day of sale, by paying to the chancery clerk, regardless of the amount of the purchaser's bid at the tax sale, the amount of all taxes for which the land was sold, with all costs incident to the sale, and five percent (5%) damages on the amount of taxes for which the land was sold, and interest on all such taxes and costs at the rate of one and one-half percent (1-½%) per month ... from the date of such sale, and all costs that have accrued on the land since the sale, with interest thereon from the date such costs shall have accrued, at the rate of one and one-half percent (1-½%) per month .... Upon such payment to the chancery clerk as hereinabove provided, he shall execute to the person redeeming the land a release of all claim or title of the state or purchaser to such land .... Said release when so executed and attested shall operate as a quitclaim on the part of the state or purchaser of any right or title under said tax sale.
 

 ¶ 64. The chancellor also reviewed section 27-45-27, as amended, effective March 27, 1995:
 

 (1) The amount paid by the purchaser of land at any tax sale thereof for taxes, either state and county ... and interest on the amount paid by the purchaser at the rate of one and one-half percent (1-½%) per month ... and all expenses of
 the sale and registration, thereof shall be a lien on the land in favor of the purchaser and the holder of the legal title under him, by descent or purchase, if the taxes for which the land was sold were due, although the sale was illegal on some other ground. The purchaser and the holder of the legal title under him by descent or purchase, may enforce the lien by bill in chancery, and may obtain a decree for the sale of the land in default of payment of the amount within some short time to be fixed by the decree. In all suits for the possession of land, the defendant holding by descent or purchase, mediately or immediately, from the purchaser at tax sale of the land in controversy, may set off against the complainant the above-described claim, which shall have the same effect and be dealt with in all respects as provided for improvements in a suit for the possession of land.
 

 ¶ 65. The effect of sections 27-45-3 and 27-45-27 is to charge the landowner interest on the amount of the tax paid by another at the sale. However, the chancellor determined that Orcutt was only entitled to an award of ad valorem taxes and statutory damages on the taxes paid for tax years 1992 through 1995. Orcutt claims that he was entitled to recover the ad valorem taxes and statutory damages on the taxes paid for tax years 1992 through 2016. I am of the opinion the chancellor was in error to only award statutory damages from 1992 through 1995. Orcutt was entitled to statutory damages on the taxes paid for tax years 1992 through 2016.
 

 ¶ 66. The chancellor also considered whether the interest should be calculated as simple or compound interest. The chancellor concluded that the interest for statutory-damages purposes should be compounded, but did not state whether it was to be compounded daily, monthly, or yearly. This is a fundamental problem and reversible error simply because neither version of section 27-45-3 or section 27-45-27 contemplates compounded interest. These statutes consider the calculation of simple interest because they compute interest (at either 1% or 1½%) for up to twenty-four months during the two-year redemption period.
 
 See
 

 Miss. Code Ann. § 27-45-3
 
 . Then, under section 27-45-27, if there is no redemption but the tax sale is later set aside, these amounts become a lien on the property. This statutory tax-sale structure was established so that if the owner of the property is allowed to set aside the tax sale, the purchaser at the tax sale will be made whole by receiving the amount of the tax paid and the "interest on all such taxes and costs at the rate of one and one-half percent (1-½%) per month ... from the date of such sale."
 
 Miss. Code Ann. § 27-45-3
 
 .
 

 ¶ 67. On $261.99 of taxes paid, the chancellor awarded $4,889.47 in interest. The chancellor clearly used a compound-interest table, but did not identify whether interest was compounded annually, monthly, or otherwise.
 

 ¶ 68. I am of the opinion that neither section 27-45-3 nor section 27-45-27 can be read to authorize compounding interest. For this reason, I concur with the majority's decision to award statutory damages and would reverse and remand this case for the chancellor to make the proper calculation of statutory damages. For the reasons previously set forth, I am only puzzled by who this monetary judgment is against and who the majority expects to be responsible for this judgment.
 

 WILSON AND TINDELL, JJ., JOIN THIS OPINION. BARNES, J., JOINS THIS OPINION IN PART.
 

 The majority affirms the award of statutory damages to Orcutt, but reverses only for a recalculation.
 

 The chancellor "did not consider Chambliss's alternative claim of adverse possession because a property owner cannot adversely possess his own property." Final J. 4. This finding conflicts with the chancellor's later finding that assesses statutory damages against the owner of the property, but the chancellor finds that "the true owner of the subject property, whether that be Charlie Chambliss or someone else, is hereby ordered to pay Eddie Orcutt [statutory damages] ...." I cannot affirm a judgment that in one section finds that Chambliss owns the property and in another says he does not.