763 So.2d 902 (2000)
Timothy Lynn KELLER, Appellant,
v.
Cynthia Ann KELLER, Appellee.
No. 1999-CA-00874-COA.
Court of Appeals of Mississippi.
May 16, 2000.
Rehearing Denied July 25, 2000.
*903 David P. Oliver, Gulfport, Attorney for Appellant.
Robert O. Homes, Jr., Gulfport, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Cynthia Ann Palmere Keller was granted a divorce from her husband Timothy *904 Lynn Keller, based on habitual cruel and inhuman treatment. On appeal Mr. Keller states that the evidence did not support this basis for divorce. Procedural error is also alleged since his discovery responses were admitted as substantive evidence at trial, and that there were defects in the "no collusion" affidavits attached to his former wife's original and amended complaints. We disagree and affirm.

FACTS
¶ 2. Cynthia Ann Palmere Keller and Timothy Lynn Keller were married in 1991. The couple lived in Biloxi with Mrs. Keller's son from a previous marriage, Nicky. No children were born to the Kellers. At trial, both the mother and the fourteen year old boy testified that Mr. Keller had frequently punished Nicky for minor transgressions by beating him with a belt, leaving bruises on his back, buttocks and legs. Mrs. Keller also testified that her husband frequently drank and stayed out late at night, that he was often cruel to her, and that he refused her sexual relations for the last year of their marriage. Mr. Keller did not testify.
¶ 3. In January 1998 Mr. Keller left the house never to return and moved into a Gulfport apartment. On July 20, 1998, Mrs. Keller filed a complaint for divorce, alleging adultery and cruel and inhuman treatment. She later amended it to include desertion for more than one year. At trial, she told the court that her husband had left after she refused his demand that she "get rid" of her son by giving custody to her former husband or her parents. She also testified that a woman named Jennifer Fiala resided with her husband, had become pregnant, but the child was lost by miscarriage. Fiala and a neighbor confirmed that the she and Mr. Keller lived together in the apartment.
¶ 4. At the beginning of the trial, the chancellor allowed the wife's attorney to introduce into evidence the transcript of the husband's deposition. Also introduced was a copy of Mr. Keller's answers to requests for admission. His counsel objected to both, but the objections were overruled. Mrs. Keller's counsel then used these discovery responses to question her about the statements that he had made in each, including a denial of any relationship with a woman named "Jennifer."
¶ 5. Toward the end of the first day of the two-day trial, Mr. Keller's attorney moved to dismiss on grounds of lack of subject matter jurisdiction, pointing out to the court that the affidavits of "no collusion" attached to both the complaint and amended complaint were not signed by her but only by a notary. This was said to violate the statutory form. Miss.Code Ann. § 93-5-7(7) (Rev.1994). The motion was denied, and the wife's attorney was ordered to file a second amended complaint with the proper affidavit and signatures before trial resumed the next morning. This was accomplished.
¶ 6. At the end of trial, the court found that the husband was "in fact guilty of adultery, but that adultery didn't have anything to do with the separation." Because he found that the separation was caused by "the habitual and continuous conduct on the part of Mr. Keller," the chancellor granted Mrs. Keller a divorce on grounds of habitual cruel and inhuman treatment. He also awarded to her $7,500 in lump sum alimony to help settle the couple's debts, along with $2,500 toward her legal fees.

DISCUSSION

I. Admission of deposition transcript, answers to requests for admission
¶ 7. Mr. Keller asserts that it was error for the court to allow his deposition and his answers to requests for admission to be introduced at the beginning of trial. He alleges that such material should be usable only as impeachment if he testifies. He argues that his wife at least should have first called him to the stand to determine *905 whether he testified consistently with the deposition.
¶ 8. Mrs. Keller did not call her husband as a witness nor did he testify on his own behalf.
¶ 9. The following rule controls use of deposition testimony at trial:
(a) Use of Depositions. At the trial or upon the hearing of a motion of an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness, or for any other purpose permitted by the Mississippi Rules of Evidence.
(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party, may be used by an adverse party for any purpose.

M.R.C.P. 32(a) (emphasis added). There is no qualification in Rule 32(a) that the witness must either be unavailable or must first testify at trial for the deposition to be admissible.
¶ 10. The supreme court held that a plaintiff was entitled to have admitted into evidence portions of a deposition by one of the defendant's employees despite that the individual was available to testify:
The federal courts have routinely accepted this view ... holding the availability of the witness to testify is immaterial, and it is error to deny the admission of a deposition into evidence on this ground....
McMillan v. King, 557 So.2d 519, 525 (Miss.1990).
¶ 11. Mr. Keller would distinguish McMillan on the basis that his deposition was introduced at the beginning of his divorce trial, without any attempt to call him as a witness. Further, McMillan dealt with an employee rather than a party. These are accurate factual but irrelevant legal distinctions. The rule states that the deposition of a party is admissible for any purpose. It is silent and therefore creates no explicit limit on the timing of the admission.
¶ 12. An additional error is said to have occurred when Mrs. Keller, who was present at the deposition, was allowed to testify as to some of the statements that he made. Among her husband's deposition statements that Mrs. Keller recounted for the court was that he denied living with a "girl named Jennifer." Though this was redundant once the deposition itself was admitted, the chancellor was unlikely to be affected improperly by the repetition. There of course is no hearsay problem, as an admission by an opposing party is not hearsay. M.R.E. 801(d)(2).
¶ 13. Likewise, the answers to the requests for admission were properly admitted into evidence. In his responses Mr. Keller denied that since his separation he had resided with someone named Jennifer. Once a Rule 36 admission is made the matters stated are "conclusively established unless the court on motion permits withdrawal or amendment of the admission." M.R.C.P. 36(b). The fact that the answers, when compared with the testimony of other witnesses at trial, might raise doubts about his credibility is not a reason to reject their evidentiary value. To have an admission conclusively establish a party's position for purposes of a case but then not let the fact-finder hear what position the party took is not the effect of the rule.

*906 II. Admission of testimony not properly identified in discovery responses

¶ 14. The second group of issues raised by Mr. Keller is that his wife did not timely supplement discovery answers. The factual basis for the first alleged error is this. In Mrs. Keller's initial answers to his interrogatories which were submitted six months prior to trial, she listed as a possible witness "Jennifer Filia ... [who] lived with Tim from approximately January, 1998." A few days prior to trial the answer was clarified by spelling "Fiala" correctly and giving her address. Over Mr. Keller's objections, Filia/Fiala was allowed to testify.
¶ 15. The obligation to supplement interrogatory answers is important. The supreme court reversed a chancellor when he proceeded with a trial even though the names of two adverse, non-family witnesses were provided the other party only four days prior to trial. Schepens v. Schepens, 592 So.2d 108, 109-10 (Miss.1991). The law may at times be technical, but not to the extreme of the requirement that Mr. Keller insists upon here. Even though his wife did not provide him with the exact spelling of his alleged girlfriend's name and her address until just before trial, he had known for months of the almost exact name. There was testimony upon which the chancellor relied that this affair did in fact exist. Fiala testified to the affair and that Mr. Keller had warned her that she might be called as a witness. He encouraged her to "lay low so [Mrs. Keller] wouldn't find me."
¶ 16. No supplementation was even needed to correct the spelling and add the address unless some prejudice could be shown. Id. The chancellor was within his discretion to find that "Jennifer" by whatever last name was no mystery woman to Mr. Keller.
¶ 17. The second discovery supplementation issue concerns Mrs. Keller's testimony about a large credit-card debt. Though the interrogatory answers disclosed the debt, Mr. Keller alleges that she also had to state in her answers "when and why the debt was incurred." The rule specifically creating the duty to supplement lists several situations in which the duty exists, M.R.C.P. 26(f). The first applies to the identity and location of potential witnesses. M.R.C.P. 26(f)(1). The next is the need to amend any incorrect response when "circumstances are such that a failure to amend the response is in substance a knowing concealment." M.R.C.P. 26(f)(2). Finally, a party or the court may require supplementation on other matters. M.R.C.P. 26(f)(3). The credit card receipts for this marital debt do not fall into any of those categories. The debt was identified in Mrs. Keller's financial statement, and Mr. Keller sought no additional information. We find no discovery violation.

III. Unsigned affidavit of no collusion
¶ 18. A complaint for divorce "must be accompanied with an affidavit of plaintiff that it is not filed by collusion with the defendant for the purpose of obtaining a divorce, but that the cause or causes for divorce stated in the complaint are true as stated." Miss.Code Ann. § 93-5-7(7) (Rev.1994).
¶ 19. The affidavits attached to Mrs. Keller's original and first amended complaint contained the proper disclaimer, but she did not sign them. The only signature was of the notary public before whom Mrs. Keller was said to have sworn to the absence of collusion. When Mr. Keller's counsel at trial filed a motion to dismiss for lack of subject matter jurisdiction due to the absence of the complainant's signature, the judge ordered that a second amended complaint with an affidavit signed by Mrs. Keller be filed the next morning. It was, and the trial continued.
¶ 20. Only the complainant may make a valid no collusion affidavit, not the attorney nor the agent of the party. Vance v. Vance, 197 Miss. 332, 20 So.2d 825, 827 (1945). In Vance, the mother of *907 an soldier stationed overseas signed the affidavit that was part of a complaint for divorce against the soldier's wife. The supreme court stated that "the language of the statute as to a divorce bill shows by its terms that the designation of the complainant as the person to make the affidavit to the bill was intended to be exclusive." Id. at 826. The supreme court did not dismiss but instead remanded so that the required affidavit could be made by the complainant personally. The court wrote:
But we are not holding that the failure to make the statutory affidavit by the complainant himself or herself will render the subsequent proceedings void, including the decree. We are not stating that the bill should be dismissed for want of jurisdiction, but that the decree will be vacated and the cause remanded, and that it may not be proceeded with further until the required affidavit is made by the complainant personally.
Id. at 827.
¶ 21. All that Vance held is that the matter "may not be proceeded with further" until the affidavit defect is corrected. That is exactly what the chancellor did hereordered the defect corrected and once it was, he proceeded.
¶ 22. We also note that unlike Vance or any of the other precedents presented to us, the challenged affidavits in the first two complaints were made by the complainant, they just were not signed by her. The statute requires that the complaint contain "an affidavit of plaintiff" that disclaims collusion. The affidavits that were contested stated that Cynthia Keller actually appeared before the notary and swore to the absence of collusion. That may be an affidavit "of plaintiff" which is all that the statute requires. At least it is not the affidavit of anyone else. Perhaps the only legitimate question is whether it is an affidavit at all since the affiant did not sign it. We leave those issues for another day. We only wish to make clear that we are not addressing whether a defect even existed.
¶ 23. Mr. Keller also states that there were improper amendments of pleadings during trial. When a plaintiff is allowed at trial to amend to include matters which a defendant could not have fairly anticipated, then error may well exist. M.R.C.P. 15 cmt (amendment denied only if it "would cause actual prejudice to the opposite party.") It appears to us that Mr. Keller logically has to be arguing one of only two things. Perhaps he is arguing that regardless of prejudice, the defect is jurisdictional and cannot be corrected. Yet Vance shows that it may properly be corrected and the proceedings that were conducted are not void. Vance, 20 So.2d at 827. Alternatively he might be saying that the allegedly faulty affidavit regarding collusion made him confused about the facts. Of course the collusion that the affidavit is to disclaim is with the other spouse, the facts of which Mr. Keller would know. Had the new affidavit alleged that there was collusion, perhaps surprise could be claimed. But such a collusion affidavit would have blocked a divorce on these grounds.
¶ 24. Pleadings in divorce cases can be amended, and indeed as in other cases it can be reversible not to permit amendment. Price v. Price, 430 So.2d 848, 849 (Miss.1983). The chancellor was within his discretion to permit this amendment.
¶ 25. Under this general jurisdiction discussion, Mr. Keller also alleges that the complaint was defective because of the manner in which it alleged the relevant judicial district of Harrison County. There are two numbered judicial districts in the county. The caption of all three complaints stated "In the Chancery Court of Harrison County First Judicial District." The complaints were filed and the parties lived in the first district. We find no defect so far in our analysis.
¶ 26. It may be that Mr. Keller is arguing that in the body of the complaint it should have been alleged that he was a resident of the first district and not just *908 that he was a resident of the county. The problem is both raised but also resolved by the fact that separate judicial districts in a county are treated as separate counties. In the Interest of K.A.R., 441 So.2d 108, 109 (Miss.1983). The complaints stated that both parties were residents of "this State and County," which fairly notifies Mr. Keller that he is alleged to be a resident of the state and county named in the caption. The separate county named is the First Judicial District of Harrison County.
¶ 27. The chancellor did not need to require an amendment when this matter was raised during trial.

IV. Habitual cruel and inhuman treatment
¶ 28. The chancellor refused to grant a divorce based on adultery, since he found that the adultery occurred after and was not the cause of the parties' separation. The supreme court has recently addressed that adultery arising after separation may nonetheless be considered as grounds for divorce. Talbert v. Talbert, 759 So.2d 1105 (¶ 14) (Miss.1999).
¶ 29. Not having to face the adultery grounds, Mr. Keller argues that the evidence did not support the finding that the chancellor did make, that a divorce should be granted due to habitual cruel and inhuman treatment. We agree that it is an extreme set of facts that would prove this basis for a divorce. Id. at (¶ 3).
¶ 30. The conduct that is needed must either (1) endanger life, limb, or health, or create a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or (2) be so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying any basis for its continuance. Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993). The offensive behavior may be established by a preponderance of the evidence, and it must consist of "something more than unkindness or rudeness or mere incompatibility or want of affection." Id. (quoting Smith v. Smith, 614 So.2d 394, 396 (Miss.1993)).
¶ 31. The court recently found the following actions by a wife to be sufficient to justify a husband's divorce: sat in front of the television all day watching the Home Shopping Channel without answering the doorbell; refused to cook, clean or care for the children; spent all her husband's paycheck on items ordered from the Home Shopping Channel so that household bills were neglected; and shouted and cursed continually at the husband, accusing him of adultery and incestuous child molestation in front of the children. Richard v. Richard, 711 So.2d 884, 887-88 (Miss.1998).
¶ 32. We look at the facts in this case. Mrs. Keller testified to at least one instance of physical violence, in which her husband threw a shoe at her during an "ugly incident." She also testified that her husband refused to have sexual relations with her for the last year of their marriage, and that when she requested that he resume marital relations with her, he told her to "get a boyfriend." A witness testified that Mrs. Keller was forced to do heavy physical work in the house and yard without her husband's help and that he humiliated her in front of family and friends. Whether these facts alone would have been sufficient or not, we find the scales to shift markedly in favor of the divorce with the evidence that Mr. Keller beat his wife's son from her first marriage, Nicky. The fourteen year old testified that Mr. Keller often beat him with a belt, leaving "black and blue" marks on his back, legs and buttocks, and this punishment was for such transgressions as chewing with his mouth open and wetting the bed. He verbally abused Nicky with such statements as he "wasn't going to amount to anything," and that he "was going to end up in jail."
¶ 33. Mrs. Keller was said to be unable to help because her husband "was a lot *909 bigger and stronger than her"; Nicky said that "he would yell at [his mother] and make her cry." The mother and child sought psychiatric help for what Mr. Keller was doing.
¶ 34. Finally, Mr. Keller, not long before he permanently left the marital home, gave his wife an ultimatum. She was to "get rid" of her son or he would leave her. When she refused to convey custody of Nicky to her ex-husband or parents, Mr. Keller left, moved into an apartment and moved in a girlfriend.
¶ 35. This was "cruel and inhuman treatment." We affirm.
¶ 36. THE JUDGMENT OF THE CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
IRVING, J., CONCURS IN RESULT ONLY.