## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00149-COA

**PROPST FAITH PITTMAN A/K/A PROPST**                    **APPELLANT**
**FAITH DEVENY PITTMAN**

**v.**

**TY LATHAN PITTMAN A/K/A TY THOMAS**                    **APPELLEE**
**LATHAN PITTMAN**

DATE OF JUDGMENT:                    12/18/2012
TRIAL JUDGE:                         HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:           PANOLA COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:              BEN LOGAN
ATTORNEYS FOR APPELLEE:              T. SWAYZE ALFORD
                                     KAYLA FOWLER WARE
NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:             PETITION FOR DIVORCE DISMISSED
DISPOSITION:                         AFFIRMED - 03/24/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND JAMES, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     Propst Pittman filed for divorce from her husband, Ty Pittman, on the ground of

habitual cruel and inhuman treatment. At the close of her case-in-chief, the Panola County

Chancery Court dismissed her complaint. Propst now appeals. Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     Ty and Propst Pittman were married April 11, 1992, in Quitman County, Mississippi.

Two children were born of the marriage, Tyler Faith Pittman, born May 10, 1994, and Mary

Lathan Pittman, born December 19, 2000. Ty and Propst separated on June 5, 2010. Upon

separation, Propst remained with the children in the marital home located at 130 Faith Drive, Batesville, Mississippi, and Ty moved into a structure that the parties referred to as the "Barn"[1] located at 227 Jackson Road, Sledge, Mississippi.

¶3.     On August 19, 2010, Propst filed a complaint for divorce on the ground of habitual cruel and inhuman treatment.  Ty filed an answer and counter-complaint for divorce on October 20, 2010.  On October 29, 2010, the chancellor entered a temporary order addressing the custody and support of the children and separate maintenance.  A guardian ad litem was appointed on July 6, 2011.  Prior to trial, Ty filed a motion to dismiss his counterclaim for divorce.

¶4.     A trial was held on November 27, 2012.[2]  Propst testified that, during the marriage, Ty forced her into bankruptcy, was uncommunicative, often called her names such as "retard," and once questioned her about whether she had an affair.  She also testified to several incidents of alleged physical abuse.  The first incident occurred in 2009 when Propst was leaving her accountant's office and she refused to show Ty her tax returns.  According to Propst, Ty "jerked" the bag out of her grasp, leaving her wrist swollen.  Propst testified that she had to have her wrist x-rayed.  The second incident of alleged abuse occurred after the parties separated.  Propst and Tyler were visiting Ty at the Barn.  According to Propst,

---

[1] According to the testimony, the Barn is a two-story bunk house used by the family for hunting.

[2] Prior to trial, both parties filed numerous pleadings and motions, none of which are pertinent to the issue on appeal.

while in the residence, she saw some paperwork that interested her and, when she picked up the documents, Ty "jumped over the couch, grabbed my neck[,] and . . . started pushing me towards the door . . . to escort me out." Propst further testified that Ty once pushed her down into a chair and that other times Ty would push her if she was in his way. However, Propst did not recount specific incidents nor when they allegedly occurred. Propst also testified about instances of alleged child abuse concerning Tyler.

¶5.     Tyler testified that there had been difficult times in the household between her parents. She described her father's temper as "uncontrollable at times." Tyler testified to the 2009 incident in which she witnessed her mother attempting to view documents at her father's residence and her father grabbing her mother by the back of the neck. Tyler testified that she had problems with her father in the past concerning discipline and punishment. She testified that her father had spanked her with a belt on numerous occasions. She described an incident that occurred when she was fifteen years old[3] in which her father broke in her bathroom door in order to confiscate her cellular phone. Ty then took the phone outside and smashed it with a hammer. She testified about another incident that occurred two or three years prior to the trial in which her father allegedly punched or pushed her into a brick wall, causing her to cut her face. According to Tyler and Propst, Tyler filed a police report but later dropped the charges.

¶6.     Ty was called as an adverse witness at trial. Ty denied ever physically abusing Propst.

_____

[3] Tyler was eighteen years old at the time of the trial.

He admitted to the 2009 incident outside Propst's accountant's office. According to Ty, he "grabbed and pulled the bag out of her hand to look at her tax returns." Ty denied that he physically assaulted Propst at the Barn. According to Ty, Propst "went to the desk and grabbed some papers . . . [Ty] put [his] hand on the back of her neck and her shoulder and . . . walked her to the door[.]"

¶7. Ty also denied physically abusing his daughter, Tyler. Ty admitted that, in the past, he had spanked Tyler for disobedience. He also admitted that on two occasions he had "slapped [Tyler] . . . with the tip of his fingers" when Tyler used profanity towards him. Ty denied that he had ever punched Tyler. Ty admitted to the incident that occurred when Tyler was fifteen years old when he took her cellular phone away from her and smashed it with a hammer.

¶8. At the conclusion of the Propst's case-in-chief, Ty moved for a dismissal of the divorce pursuant to Mississippi Rule of Civil Procedure 41(b). The chancellor found that Propst had failed to prove habitual cruel and inhuman treatment and dismissed the complaint for divorce. Propst now appeals raising the following issue: whether the chancellor abused his discretion in finding that she did not prove her grounds for divorce and failing to render a fair review of her evidence under Rule 41(b). Finding no error, we affirm.

## DISCUSSION

¶9. Propst argues that the chancellor erred in finding that she failed to prove habitual cruel and inhuman treatment and dismissing her divorce action. We disagree.

4

¶10. A motion for an involuntary dismissal pursuant to Rule 41(b) should be granted if the chancellor, "after viewing the evidence fairly, . . . would find for the defendant." *Amos ex rel. Amos v. Jackson Pub. Sch. Dist.*, 139 So. 3d 120, 123 (¶7) (Miss. Ct. App. 2014). A chancellor "must deny a motion to dismiss only if the [chancellor] would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." *Id.* When reviewing a Rule 41(b) dismissal, this Court "will not overturn the decision of a chancellor if his findings are supported by substantial evidence unless he abused his discretion, was manifestly wrong, or applied an erroneous legal standard." *Jones v. Jones*, 101 So. 3d 731, 732 (¶4) (Miss. Ct. App. 2012).

¶11. A party seeking a divorce on the ground of habitual cruel and inhuman treatment bears the burden of proving his ground by a preponderance of the evidence. *Hoskins v. Hoskins*, 21 So. 3d 705, 707 (¶6) (Miss. Ct. App. 2009). We have defined habitual cruel and inhuman treatment as:

> Conduct that . . . either (1) "endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief"[;] or (2) "is so unnatural and infamous" as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance.

*Id.* (quoting *Kumar v. Kumar*, 976 So. 2d 957, 961 (¶5) (Miss. Ct. App. 2008)). In addition, the Mississippi Supreme Court has held that "[h]abitual cruel and inhuman treatment may be established only by a continuous course of conduct . . . . [S]uch conduct must be habitual, that is, done often enough or so continuously that it may reasonably be said to be a permanent

5

condition." *Holladay v. Holladay*, 776 So. 2d 662, 677 (¶64) (Miss. 2000). Thus, the evidence required to support granting a divorce on the ground of cruel and inhuman treatment requires "more than mere unkindness, rudeness, or incompatibility." *Id.*

¶12. In granting Ty's motion for an involuntary dismissal, the chancellor, viewing the evidence fairly, found that the evidence presented did not meet the elements of cruel and inhuman treatment. The chancellor noted that, although Propst claimed that Ty forced her into bankruptcy, Propst testified that she was represented by counsel. The chancellor found there was no evidence that Ty coerced Propst into bankruptcy. As to physical abuse, the chancellor noted that Propst made general allegations of abuse without specificity, except regarding the occasion in which Ty grabbed her from behind when she attempted to leave his house with important papers and the occasion outside Propst's accountant's office when Ty forcefully took papers from Propst. However, the chancellor noted that at no time were the police called, nor were medical records produced documenting abuse.

¶13. "This Court must give great deference to the factual findings of the chancellor that are supported by substantial evidence." *Wilbourne v. Wilbourne*, 748 So. 2d 184, 187 (¶5) (Miss. Ct. App. 1999). Upon reviewing the record of the proceedings below, we find that there is sufficient evidence to support the chancellor's finding that Propst is not entitled to a divorce on the ground of cruel and inhuman treatment. Propst failed to demonstrate a continuous course of conduct that was so unkind, unfeeling, or brutal as to endanger her, or put her in reasonable apprehension of danger to life, limb, or health. *Gallaspy v. Gallaspy,* 459 So. 2d

6

283, 285 (Miss. 1984). Furthermore, many of her complaints were uncorroborated, except the incident at the Barn that was corroborated by Tyler. Nevertheless, even if taken as true, the complained of incidents are remote and isolated events and fail to rise to the level of conduct that is habitual or so continuous that it may reasonably be said to be a permanent condition.

¶14. We agree with the chancellor that the parties likely have irreconcilable differences; however, "mere incompatibility is not enough to show habitual cruel and inhuman treatment." *Id.* "Habitual cruel and inhuman treatment is not the catch-all category to permit a divorce . . . [and,] [a]bsent an agreement . . . that would permit an irreconcilable differences divorce, neither party is entitled to be granted a divorce without providing the proof necessary to support the grounds that are alleged." *Crenshaw v. Crenshaw*, 767 So. 2d 272, 276 (¶14) (Miss. Ct. App. 2000). Accordingly, we find that the chancellor did not abuse his discretion by dismissing Propst's complaint for divorce on the ground of habitual cruel and inhuman treatment. This issue is without merit.

¶15. **THE JUDGMENT OF THE PANOLA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.**

7