# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-00149-SCT

*PROPST FAITH PITTMAN a/k/a PROPST FAITH DEVENY PITTMAN*

*v.*

*TY LATHAN PITTMAN a/k/a TY THOMAS LATHAN PITTMAN*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:   12/18/2012
TRIAL JUDGE:     HON. PERCY L. LYNCHARD, JR.
COURT FROM WHICH APPEALED: PANOLA COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT: BEN LOGAN
ATTORNEYS FOR APPELLEE: T. SWAYZE ALFORD
          KAYLA FOWLER WARE
NATURE OF THE CASE:  CIVIL - DOMESTIC RELATIONS
DISPOSITION:     REVERSED AND REMANDED - 06/02/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1. Propst Pittman filed a complaint for divorce against Ty Pittman on the grounds of habitual cruel and inhuman treatment. After the presentation of Propst's evidence, Ty moved for a dismissal under Mississippi Rule of Civil Procedure 41. The chancery court found insufficient evidence to grant the divorce, and thus granted the motion to dismiss. Because the chancery court applied an erroneous legal standard, we reverse the judgments of the

Panola County Chancery Court and the Court of Appeals and remand the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.        Ty and Propst Pittman were married April 11, 1992, in Quitman County, Mississippi. Two children were born of the marriage, Tyler Faith Pittman, born May 10, 1994, and Mary Lathan Pittman, born December 19, 2000. Ty and Propst separated on June 5, 2010. Upon separation, Propst remained with the children in the marital home . . . and Ty moved into a structure that the parties referred to as the "Barn" . . . .
          On August 19, 2010, Propst filed a complaint for divorce on the ground of habitual cruel and inhuman treatment. Ty filed an answer and counter-complaint for divorce on October 20, 2010. On October 29, 2010, the chancellor entered a temporary order addressing the custody and support of the children and separate maintenance. A guardian ad litem was appointed on July 6, 2011. Prior to trial, Ty filed a motion to dismiss his counter[-complaint] for divorce.
          A trial was held on November 27, 2012.

*Pittman v. Pittman*, No. 2013-CA-00149-COA, 2015 WL 1296037, at *1 (Miss. Ct. App. March 24, 2015).

¶3.      At trial, Propst testified that she was unable to communicate with Ty, and that if she communicated with him about the children, "he would blow up usually." She testified that he did not want to discuss the children or other issues with her, and that one time he stated "just pretend like I'm dead or not here because I just need to be alone and not be talked to." Propst also testified to Ty physically harming her. She testified regarding one instance in which she and Tyler went to the barn to pick up Mary Lathan, and Propst saw some papers on the desk that interested her. She picked them up, and Ty jumped over the couch, grabbed her neck and choked her, and pushed her out the door. She testified that she could hardly breathe, and that Tyler "came after" Ty. She testified that he frequently, and for years, would

2

push her out of his way, and one time, he grabbed her head and pulled her hair to get her out of the way. She further testified that Ty once jerked a bag off her arm, breaking the handle on the bag and causing Propst's wrist to swell. She testified that she went to the doctor regarding this incident.[1] Propst testified that Ty once told her "F&*! you" in public. She further testified that he frequently called Propst "retard" and referred to Tyler by the name of a farmhand whom Ty believed to be "stupid." Propst also referenced an attack by Ty on Tyler and the police report filed on that incident. Additionally, Propst testified that Ty had questioned her about men working on their house and their neighbor, insinuating that she was having affairs. Further, Propst testified at length regarding the couple's financial affairs,[2] and testified that Ty controlled the businesses and the finances, and that he had forced her into bankruptcy.

¶4.     Tyler also testified. While Tyler testified that she loved her father and that he supported her and spent time with her, she also testified to numerous troubling incidents. She described her father's temper as "uncontrollable." She testified to an incident shortly before her fifteenth birthday in which Ty broke down a door to get to her, took her phone, and smashed it with a hammer. A photograph of the broken door was introduced into evidence, as was a letter written by Ty shortly after the incident, in which he admitted to anger problems, but essentially blamed his issues with anger on Tyler's behavior. He also noted

---

[1]No doctor's records regarding this incident were introduced in the divorce case-in-chief, but they were placed in the court file with the guardian ad litem's (GAL) supplemental report regarding custody, after the divorce was denied.

[2]The Pittmans were involved in several farming ventures and businesses, and their finances are complicated.

that he had left the house and informed Tyler that he would not be returning home for her fifteenth birthday. With the letter, he enclosed cash for a phone. Tyler testified regarding another incident in which Ty "punched her into a brick wall" in October or November of 2009 because he was angry about not being able to come home. Tyler and Propst reported this incident to the police. Also placed into evidence were the photograph of the injury to Tyler's face taken by the Batesville Police Department, Tyler's statement regarding the incident, and the domestic protection order entered forbidding Ty to go within 150 feet of Tyler. Tyler further testified that to punish her, Ty would put her nose to the floor for forty-five minutes and order her to remain still. He would get her to the floor by pushing her and holding her down. She testified that this started when she was eight or nine years old. She also testified that Ty would hit her with a belt with metal on it until she had welts on numerous occasions. She testified to another incident in which Ty threw her into a wall and broke a vein in her hip. She testified that on another occasion, her father chased her out of her house while her mother was out of town and she had to call her grandmother to come pick her up.

¶5. Tyler then testified about the altercation at the barn between Ty and Propst in which Propst picked up some papers that interested her. Tyler stated that Ty jumped over a couch and grabbed Propst by the neck on her pressure points. She testified that she jumped on Ty's back trying to make him release Propst. Tyler also testified that in April "around her graduation," she heard noises coming from the laundry room. She heard her mother saying "stop, stop" and pushed open the laundry room door. She stated that Ty was guarding the

door and Propst was pinned up in the laundry room.[3] Tyler also testified that, in general, she witnessed Ty pushing Propst and yelling at her.

¶6. Propst also called Ty as an adverse witness. Ty testified that things had been "stormy," but that he had never pushed Propst or pulled her hair. As to the barn incident, Ty claimed that Propst took some papers off the desk and threw them on the floor, so he "put [his] hand on the back of her neck and her shoulder and just walked her to the door, and my daughter was sitting in the kitchen. . . . And I eased her out the door[.]" Ty also testified to the bag incident, stating that he grabbed the bag out of Propst's hands so he could look at the tax returns, because Propst would not give them to him. He denied that Propst was injured, but admitted that he was aware she received medical care regarding the incident. Ty did admit to accusing Propst of having affairs.

¶7. Ty also denied physically abusing Tyler. He admitted only to spanking her. Yet he also admitted that he had slapped her twice "with the tip of [his] fingers." He also admitted that he "pushed" open a locked bathroom door, took Tyler's phone, and smashed it with a hammer. He denied having any temper or anger problems, but admitted that he wrote the letter to Tyler stating that he had anger problems. He also denied that the incident reported to the Batesville Police Department occurred, and stated that the red mark on Tyler's face was acne and a potent acne cocktail that "ate it off."

_____

[3]The supplemental record, which was not before the chancellor in the divorce proceeding, but was placed in the court file during the later custody proceeding, contains a police report in which Propst alleged that Ty raped her in the laundry room of their house on April 15, 2012. She stated that she repeatedly stated "stop Ty stop Ty."

5

¶8. The chancellor also had before him the GAL's report regarding the welfare of the minor children. The GAL reviewed numerous documents and interviewed Propst, Azalia Moore (Propst's godmother), Tyler, Mary Lathan, and Ty. In his conclusions and recommendations, the GAL stated that "It appears that what was a disturbing pattern of physical discipline inflicted by Mr. Pittman on the oldest child, Tyler, has over the last year ceased." Notably, Ty had not lived with Tyler in the year that the disturbing pattern of physical discipline ceased. The GAL continued that "It is equally clear that Mr. Pittman, either from stress or his own family history, reacted with anger in administering physical discipline. I sense that Mr. Pittman, a man who has always been in control of his work and his family, has experienced an unraveling of his structured environment." The GAL then noted that, while he usually conducted an *Albright*[4] analysis when the issue of custody has been raised, "in this case it is simply beyond dispute that the best interests of the children will be served by them remaining in the paramount care, custody and control of their mother."

¶9. At the close of Propst's case-in-chief, Ty moved for a dismissal of the divorce pursuant to Rule 41. From the bench, the chancellor granted Ty's Rule 41 motion to dismiss. The court first dismissed Propst's claim that Ty had forced her into bankruptcy, because she and Ty were represented by the (same) counsel, and there was no evidence of coercion. He also cited a lack of communication during the marriage, and the court acknowledged "that the parties have had a disagreement, particularly with the discipline of the children." The court noted Propst citing Ty's uncontrollable temper, and stated that "[s]he does that in

---

[4]*Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

6

general terms and with little specificity.  They did, in fact, argue during the marriage, and I think that is corroborated by the daughter."  The court then noted that Propst particularly pointed to physical assaults.  The court noted

> again that these are in general terms and not with much specificity with the exception of one, an incident which occurred shortly after the separation at the barn over an instance where the plaintiff attempted to leave with some important papers that the defendant did not want her to have, and then an incident where she was pushed into a rocker and into a brick wall on one occasion.  However, importantly, it should be noted that at no time were the police called, and the only time that she was forced or, in fact, sought medical attention in any way was an incident which he jerked a bag from her hand, and there's no evidence of any injury to her following that doctor's appointment.

The court also noted the derogatory comments made toward Propst.  The court then found that "the proof presented does not meet the elements of habitual cruel and inhuman treatment."

¶10.    After the court dismissed the complaint for divorce, Propst requested that the court decide the custody issue, and the court agreed to do so.  The GAL issued a supplemental report.  The GAL concluded that "the father has exhibited an underlying pattern of behavior that is extremely disruptive of a stable home environment and that is contrary to the best interests of the minor children."   The GAL also adopted the conclusions and recommendations set forth in his prior report.  Propst requested that the GAL attach numerous documents to his report, which he agreed to do.  Documents included in the report that were not introduced at trial included Propst's statement to the Batesville Police Department concerning the domestic case between Tyler and Ty, the police report from that case in which the reporting officer stated that "[t]here was a large mark over the right eye of

7

the juvenile and was still swollen," the police report regarding Ty's alleged rape of Propst, the medical record from the incident in which Ty grabbed a bag from Propst noting that some swelling of the wrist was present, and a letter from Tyler to Ty about the broken phone in which she apologized, lamented his demolishing her phone, noted that she felt she was acting out because Ty was involving her in the arguing between Propst and himself, and begged him to come home for her birthday. The court ultimately awarded joint legal custody of the children to Propst and Ty and sole physical custody of the children to Propst, with Ty receiving standard visitation.

¶11. Propst appealed the chancellor's decision to grant Ty's motion to dismiss the divorce, and the Court of Appeals affirmed. The Court of Appeals found that "Propst failed to demonstrate a continuous course of conduct that was so unkind, unfeeling, or brutal as to endanger her, or put her in reasonable apprehension of danger to life, limb, or health." ***Id.*** Thus, the Court of Appeals concluded that the chancellor did not abuse his discretion in dismissing Propst's complaint for divorce. ***Id.*** Propst petitioned this Court for a writ of certiorari, which we granted.

**ANALYSIS**

¶12. Mississippi Rule of Civil Procedure 41 provides that, "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." M.R.C.P. 41. In considering a Rule 41 motion to dismiss, the judge must consider the evidence fairly, rather than in the light most favorable

8

to the plaintiff. *Stewart v. Merchants Nat'l Bank*, 700 So. 2d 255, 259 (Miss. 1997). The court should deny a Rule 41 motion to dismiss "only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." *Id.* (internal quotations omitted). We will overturn the chancellor's decision on a Rule 41(b) motion to dismiss only if the findings are not supported by substantial evidence, or the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard. *Id.*; *Steiner v. Steiner*, 788 So. 2d 771, 774 (Miss. 2001); *Jones v. Jones*, 101 So. 3d 731, 732 (Miss. Ct. App. 2012). "Legal questions, however, are reviewed de novo. *Sanford v. Sanford*, 124 So. 3d 647, 652-53 (Miss. 2013). Consequently, "[w]hile the chancellor's determinations of the events that preceded the divorce are findings of fact, his finding that [a defendant's] conduct rose to the level of habitual and inhuman treatment as defined as a ground for divorce . . . is a determination of law, and is reversible where the chancellor has employed an erroneous legal standard." *Potts v. Potts*, 700 So. 2d 321, 322 (Miss. 1997).

¶13. Either party to a marriage may be granted a divorce for cause if that party proves habitual cruel and inhuman treatment. Miss. Code Ann. § 93-5-1 (Rev. 2013). To establish habitual cruel and inhuman treatment, the party must introduce evidence that proves conduct that 1) "endangers life, limb, or health, or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief," or 2) is "so unnatural and infamous as to make the marriage revolting to the" party seeking relief and "render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis

9

for its continuance." ***Richard v. Richard***, 711 So. 2d 884, 888 (Miss. 1998) (internal quotations omitted). The party seeking relief must prove "something more than unkindness or rudeness or mere incompatibility or want of affection." ***Id.*** (internal quotations omitted). Moreover, "[t]he party alleging cruel and inhuman treatment must typically corroborate the testimony." ***Rawson v. Buta***, 609 So. 2d 426, 431 (Miss. 1992).

¶14.  In his ruling, the chancellor failed to make any factual findings to which this Court must defer regarding the violence perpetuated by Ty against Tyler in considering whether Propst had satisfied her burden to defeat a Rule 41 motion to dismiss. Namely, the chancellor did not mention, either way, in his lengthy findings the violence against Tyler in his consideration of whether Propst had satisfied her burden, nor did he make any credibility determinations or findings of facts regarding this issue. We acknowledge that this Court has not made a clear pronouncement that violence against a child can be considered as habitual cruel and inhuman treatment of a spouse, and we thus recognize that this lack of clear pronouncement may be why the chancellor understandably failed to make any factual findings regarding the violence against Tyler.[5] Thus, we will examine the legal question of

---

[5]The GAL specifically found that there had been a "disturbing pattern of physical discipline inflicted by Mr. Pittman on the oldest child, Tyler . . . ." and that Ty "reacted with anger in administering physical discipline." The GAL report specifically noted the instances of abuse recalled by Tyler and Propst at trial. The GAL report went so far as to decline to perform an ***Albright*** analysis because it was "simply beyond dispute" based on the facts that Propst should have custody. At the hearing, the chancellor addressed whether he would decide custody. He stated that "the overwhelming majority of the evidence at this point in time indicates that the two minor children, both girls, should remain with the – in the temporary custody of the natural mother. I base that largely not only what has been presented before me, but also the report of the duly appointed guardian ad litem. . . . At this point in time, I don't have any reason for not accepting his recommendation." The chancellor's statements about the GAL report, which found Ty's treatment of Tyler

10

whether violence against a child may be considered in the determination of whether one spouse has engaged in the habitual cruel and inhuman treatment of the other spouse. This Court has certainly considered the traumatic and detrimental effect a tumultuous marriage has on children when considering whether a divorce should be granted based on habitual cruel and inhuman treatment.[6] *See, e.g.*, **Richard**, 711 So. 2d at 889. Moreover, the Court of Appeals, a court which chancery courts are bound to follow, has considered evidence of child abuse or mistreatment as conduct that supports granting a divorce based on habitual cruel and inhuman treatment. In **Jones**, the Court of Appeals detailed the husband's inappropriate sexual behavior with the couple's children and considered it as supporting the chancellor's grant of divorce for habitual cruel and inhuman treatment. **Jones**, 43 So. 3d at 476-77. The Court of Appeals noted that the wife "found this behavior offensive and alarming." **Id.** at 477. In **Keller v. Keller**, a case incorrectly cited by the chancery court in this case,[7] the Court of Appeals noted that the record indicated that the husband had

---

disturbing, as well as his statement about the evidence presented to him, indicate that the chancellor believed much of what was presented regarding Ty's treatment of Tyler. This only bolsters the notion that the chancellor was unaware that he could consider this evidence in determining whether to grant or deny the Rule 41 motion.

[6]The chancellor in this case did not appear to consider the detrimental effect of the tumultuous marriage on the children. Part of his reasoning for dismissal was that Propst was more concerned with the effects of Ty's derogatory comments toward her on the children, than on herself.

[7]The chancery court stated that "In the afore-cited **Keller v. Keller**, the Court did not find sufficient grounds to award a divorce." At that point, the chancellor then stated that the evidence in the case at hand did not meet the elements of habitual cruel and inhuman treatment. In **Keller**, both the chancery court and the Court of Appeals found sufficient grounds to award a divorce based on habitual cruel and inhuman treatment. **Keller v. Keller**, 763 So. 2d 902, 904, 908-09 (Miss. Ct. App. 2000).

11

committed at least one instance of physical violence, by throwing a shoe at his wife, that he refused to have sexual relations with his wife and told her to "get a boyfriend" if she wanted sexual relations, that he forced his wife to do heavy physical work in the house and yard without his help, and that he humiliated her in front of family and friends. *Keller v. Keller*, 763 So. 2d 902, 908 (Miss. Ct. App. 2000). The Court of Appeals found that "[w]hether these facts alone would have been sufficient or not, we find the scales to shift markedly in favor of the divorce with the evidence that Mr. Keller beat his wife's son from her first marriage[.]" *Id.* The Court of Appeals detailed the physical and verbal abuse of the child, as well as Mr. Keller's demands that Mrs. Keller convey custody of her son to her ex-husband or her parents, and stated that "[t]his was 'cruel and inhuman treatment.'" *Id.* at 908-09.

¶15. It is common sense that abuse or mistreatment of a person's child may constitute cruelty to that person.[8] Such conduct may certainly be "so unnatural and infamous as to make the marriage revolting to the" party seeking relief and "render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance,"

---

[8]Additionally, trapping spouses and children in familial arrangements simply because the child, rather than the spouse, was the victim of abuse or mistreatment makes little sense and it certainly cannot have been the Legislature's intent to imprison those children in abusive situations simply because their nonviolent parent could not obtain a divorce. Incidentally, the nonviolent spouse would have a duty to report any child abuse or neglect committed by the other spouse. *See* Miss. Code Ann. § 43-21-353(1) (Rev. 2015). That parent could also be held criminally liable in certain instances for failing to report his or her spouse. *See* ***Sherron v. State***, 959 So. 2d 30 (Miss. Ct. App. 2006) (mother who helped minor child get an abortion after rape by mother's husband found guilty of being an accessory after the fact to statutory rape, and was not entitled to a mitigating defense instruction that a failure to report was not a crime, because she did have an affirmative duty to report the abuse of her daughter).

provided the party seeking relief proves by a preponderance of the evidence that the abuse or mistreatment of the child was so unnatural and infamous to the party as to make the marriage revolting to that party, or that it contributes, along with other factors, to rendering the marriage revolting to that party. *See* **Richard**, 711 So. 2d at 888. Indeed, "[i]t would be difficult to imagine a course of conduct that would be more intolerable or unbearable, or that would be more subversive of the family relationship, than harsh and abusive treatment of a child." **Greco v. Greco**, 356 S.W.2d 558, 566 (Mo. Ct. App. 1962). We take this opportunity to clarify that chancery courts may consider evidence of child abuse or mistreatment as conduct supporting the grant of a divorce based on habitual cruel and inhuman treatment.[9] It is not clear that the chancery court in this case considered the alleged instances of physical violence and other mistreatment by Ty against Tyler in determining whether Propst had presented evidence of habitual cruel and inhuman treatment sufficient to defeat Ty's Rule 41 motion to dismiss; thus the court did not apply what we now clarify is the appropriate legal standard. We therefore reverse the chancery court's grant of Ty's Rule 41 motion to dismiss and remand the case for further proceedings so that the chancellor may have the opportunity to consider the violence against Tyler in light of our clarification of the law. On remand, the chancellor should specifically consider and make findings regarding Ty's treatment of Tyler in determining whether Propst has presented evidence

---

[9]Other states have held likewise. *See* **Jaikins v. Jaikins**, 122 N.W.2d 673 (Mich. 1963) (noting the court's duty toward the children, and stating that "mistreatment of children, if the other parent as here is guiltless thereof, constitutes some evidence of cruelty by the guilty party which justifies a divorce."); **Greco v. Greco**, 356 S.W.2d 558, 566 (Mo. Ct. App. 1962) (Mistreatment of a child constitutes an "indignity.").

13

sufficient to defeat Ty's Rule 41 motion to dismiss regarding her entitlement to a divorce based on cruel and inhuman treatment.

## CONCLUSION

¶16. The chancery court did not apply the correct legal standard when it failed to consider acts of child mistreatment by Ty in the assessment of whether sufficient evidence of habitual cruel and inhuman treatment existed. We therefore reverse the judgment of the Panola County Chancery Court granting Ty's Rule 41 motion to dismiss, reverse the judgment of the Court of Appeals, and remand the case to the Panola County Chancery Court for further proceedings consistent with this opinion.

¶17. **REVERSED AND REMANDED**.

**WALLER, C.J., DICKINSON, P.J., KITCHENS AND COLEMAN, JJ., CONCUR. BEAM, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND LAMAR, J. MAXWELL, J., NOT PARTICIPATING.**

**BEAM, JUSTICE, DISSENTING:**

¶18. Respectfully, I dissent from the majority's conclusion that the chancellor erred in granting the Rule 41 motion to dismiss the divorce complaint. This Court will not disturb the findings of a chancellor "unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard*." McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000).

¶19. The majority finds that the chancellor applied the wrong legal standard because he failed to specify in his findings of fact whether he had considered Ty's alleged abuse of Tyler in determining whether Propst had provided sufficient evidence to support a divorce for habitual cruel and inhuman treatment. While I agree that chancellors may consider evidence

14

of abuse to a child when determining whether a divorce on this ground should be granted, the record before us does not evidence the chancellor failed to consider such or that the chancellor applied the wrong legal standard.

¶20.    In considering a motion to dismiss, the judge must consider the evidence fairly and not in the light most favorable to the plaintiff. *In re Adoption of D.N.T.*, 843 So. 2d 690, 711 (Miss. 2003). " 'The court must deny a motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case.' " *Id.* (quoting *Century 21 Deep S. Props., Ltd. v. Corson*, 612 So. 2d 359, 369 (Miss. 1992)).

¶21.    In the ten-page findings of fact, the chancellor addressed the reasons Propst argued to support a divorce in her favor. The chancellor stated that "looking at the evidence fairly," Propst did not present sufficient evidence to warrant a divorce. The majority correctly notes that the chancellor neither mentioned nor made any findings of fact in regard to whether he accepted or rejected all the testimony related to the alleged abuse toward Tyler.[10] (Maj. Op. ¶ 14). But the majority concluded that it is not clear whether he even considered the abuse. *Id.* I do not agree.

¶22.    The chancellor heard testimony from Propst, Tyler, and Ty. Tyler testified about several instances in which Ty exhibited anger and violence toward her. She testified that he had broken her bedroom door, had taken her phone and had smashed it with a hammer. She testified that Ty had thrown her into a wall and burst a vein in her hip and, on another occasion, had "punched" her into a brick wall. She also testified that when she was younger,

---

[10]There was no request for findings of fact.

he would hit her with the belt buckle, making her skin welt. Ty, contrastingly, denied ever being physically abusive toward Tyler, although he admitted that he had destroyed Tyler's phone. He also admitted to slapping Tyler with the tips of his fingers. The chancellor heard the testimonial evidence from both Tyler and Ty in regard to Ty's treatment of Tyler.

¶23. In response to Ty's motion to dismiss, Propst's attorney stated: "we believe we've done an adequate job of showing inhuman - - habitual inhuman treatment, cruel and inhuman treatment, through his abuse of not only of his wife, but his children . . . [,] [o]f Tyler Pittman." Propst could have asked the chancellor to make findings of fact, and the chancellor could have, but it is not appropriate for this Court to do so. Although the chancellor did not specify in the findings of fact whether he believed the allegations of abuse, we have nothing before us in a cold record to find opposite. There was ample testimony, and Propst argued the abuse toward Tyler supported her grounds for divorce.

¶24. Lastly, the chancellor has an advantage over the reviewing court because he has the opportunity to see and hear the witnesses testify. Being in the position to study each witness's demeanor and make credibility determinations with respect to each witness, the chancellor was in the better position to assess the evidence and weigh the truthfulness and reliability of the witnesses. Obviously, the chancellor held that habitual cruel and inhuman treatment was not proven to him, and thus the proper grounds for divorce had not been established. I would affirm and find that the chancellor did not err in granting the motion to dismiss.

¶25. I agree with the majority that abuse and cruelty to one's child may cause such injury to the spouse as to rise to the level of grounds for divorce of habitual cruel and inhuman

16

treatment. But the chancellor's failure to grant the divorce does not exhibit his lack of knowledge of that truth.

**RANDOLPH, P.J., AND LAMAR, J., JOIN THIS OPINION.**