751 So.2d 1132 (1999)
Linda Morgan MARTIN, Appellant,
v.
Benjamin F. MARTIN, III, Appellee.
No. 1998-CA-01172-COA.
Court of Appeals of Mississippi.
August 3, 1999.
Rehearing Denied November 16, 1999.
Certiorari Denied February 24, 2000.
*1133 John W. Crowell, Columbus, Attorney for Appellant.
Sean Wesley Ellis, Chad J. Hammons, Jackson, Sharon G. Plunkett, Gulfport, for Attorneys for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
DIAZ, Judge, for the Court:
¶ 1. This case arises from a May 29, 1998 order of the Lowndes County Chancery Court terminating Benjamin Martin's alimony obligations to his former wife, Linda Martin. On appeal, Ms. Martin challenges the chancellor's findings that she no longer needed $5,000 per month in alimony because of her substantial assets and earnings potential and that her "de facto marriage" to Norm Anderson warranted the termination of Dr. Martin's support obligations to her. She further asserts that the chancellor erred in refusing to grant her request for attorney fees. We find no merit to the assignments of error. Accordingly, we affirm the order of the court below.

FACTS
¶ 2. Linda and Ben Martin were married on May 30, 1971. They are the parents of two children, born in 1972 and 1976. The Martins separated in August of 1988. On November 6, 1990, Ms. Martin was granted a divorce from Dr. Martin by the Lowndes County Chancery Court.
¶ 3. Dr. Martin is a pathologist, who at the time of the divorce, had a net worth of approximately $1,650,000 and a monthly income of $26,000. Ms. Martin, who holds undergraduate degrees in medical technology and business, stayed at home and took care of the children. The chancellor noted that since she had not worked in a number of years, it would take her about a year to become current in her profession. At the time of the divorce, Ms. Martin was forty-three years old and Dr. Martin, fifty-two years old. Ms. Martin was awarded lump sum alimony in the amount of $150,000 and an equitable distribution of the parties' assets including property, art, investments and forty percent of Dr. Martin's pension and profit sharing plan, totaling in excess of $900,000; $5,000 per month alimony; monthly child support payments of $1,000 per child; and $24,559 in attorney fees.
¶ 4. Subsequent to the divorce, Ms. Martin sold the family home in Columbus, Mississippi and built a 3,300 square foot house in an affluent neighborhood in Brentwood, Tennessee. She attended law school in Nashville and graduated in the top third of her class in 1996. She was licensed to practice law in Tennessee in November, 1996. Asserting that she was unable to find a job with a law firm, Ms. Martin worked as a paralegal in the Tennessee Attorney General's Office, earning approximately $18,000 a year. She left that position to open her own practice and at the time of these proceedings, was earning approximately $12,000 per year.
¶ 5. Since her move to Tennessee, Ms. Martin has become involved in a long-term relationship with Norm Anderson. She and Anderson were engaged in December, 1995. She wears the diamond engagement ring he gave her and has, for some time, represented to friends that they plan to marry "next year." Anderson, however, testified that he was not in a financial position to remarry and Ms. Martin stated that she was not emotionally ready to marry again. She admitted, however, that she and Anderson had not married because she needs the financial support provided by the alimony received from Dr. Martin.
¶ 6. Ms. Martin and Anderson maintain separate residences, with Anderson living in a small furnished efficiency apartment. *1134 He has a key and garage door opener for Ms. Martin's house. Although Anderson allegedly spends the night only a few times each month, he eats at the house regularly, and comes and goes while running errands and doing yard work and other household tasks for Ms. Martin. The couple vacation together and have sexual intercourse "on occasion." They attend church together, spend holidays together and buy gifts for one another. Anderson purchases items for Ms. Martin at Castner Knott, the department store where he works, using his employee/family discount. He also provides her with significant discounts on the "BeautiControl" cosmetics she buys from him. Between 1994 and 1997, the record shows that Ms. Martin wrote checks to Anderson of more than $11,000 while during the same period, writing checks to her younger son for only $220.
¶ 7. Ms. Martin claims monthly expenses of $6,829, including $903 in business expenses and $881 in taxes. She listed a gross income of $1046 per month from her law practice and an additional $692 in dividends and interest. She has a net worth of approximately $936,500.
¶ 8. On March 21, 1997, Dr. Martin filed a motion for modification of the final decree. He sought a reduction or termination of the periodic alimony payments he has been making to Ms. Martin, asserting that there had been a change in circumstances based on her graduation from law school as well as her relationship with Anderson. After hearing two days of testimony, the chancellor granted Dr. Martin's motion, terminating his financial obligations to Ms. Martin. He found that Ms. Martin had structured her relationship with Anderson so as "to receive the benefits of the relationship with some semblance of respectability and at the same time to continue her alimony payments from Ben."
¶ 9. Considering the factors set forth in Johnson v. Johnson, 650 So.2d 1281 (Miss. 1994), the chancellor found no material change in Dr. Martin's financial circumstances, but noted that at sixty-one, he was nearing retirement age. He imputed to Ms. Martin an earning capacity of not less than $30,000 per year based on her age, intelligence, appearance, education and work experience. Looking at the needs of the parties, he found that Ms. Martin's housing expenses were not reasonable.
¶ 10. Looking at other factors which may be deemed by the court to be just and equitable in the setting of alimony, the chancellor considered the support Ms. Martin receives and has provided to Anderson as a significant factor to weigh. Thus he found it unjust and inequitable to require Dr. Martin to continue supporting his former wife. Further considering that the children were in college with Dr. Martin paying all of their expenses, Ms. Martin's net worth of over $900,000, the fact that she had received alimony for seven years totaling $420,000 and that she was a licensed attorney with good future employment prospects, the chancellor determined that it was time to terminate her periodic alimony. Further finding that she had failed to demonstrate an inability to pay her attorney fees, the chancellor denied her request for attorney fees.
¶ 11. Ms. Martin's motion for a new trial and to alter or amend the judgment was denied by the chancellor on June 22, 1998. Aggrieved, she now appeals to this Court for relief.
DISCUSSION OF THE LAW
I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT LINDA MARTIN HAD NO NEED FOR CONTINUING PERIODIC ALIMONY
II. WHETHER THE CHANCELLOR ERRED IN FINDING SUFFICIENT GROUNDS FOR THE TERMINATION OF ALIMONY
¶ 12. Ms. Martin's assails the chancellor's decision to terminate her periodic alimony on two grounds, charging that he erred in determining that she no longer had any need for the $5,000 monthly *1135 support she was receiving and that her relationship with Norm Anderson further was sufficient grounds for the termination of alimony. The chancellor, however, is afforded wide discretion in alimony cases. We will not reverse the chancellor's decision on appeal unless he was manifestly in error in his finding of fact and abused his discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). "We, as an appellate court, will affirm the decree if the record shows any ground upon which the decision may be justified.... We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors." Tucker v. Tucker, 453 So.2d 1294, 1296 (Miss.1984)(citing Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)).

I. The Need for Periodic Alimony
¶ 13. The record supports the chancellor's findings that Ms. Martin has both substantial assets and earning potential. She complains, however, that without her monthly alimony payments from Dr. Martin, her expenses will exceed her income by nearly $6,000 a month. She further disagrees with the chancellor's finding that her housing expenses are unreasonable and his suggestion that she might convert some of her non-income-producing assets into income-producing assets. We cannot fault the chancellor for suggesting that Ms. Martin might be able to achieve a higher income on her investments. We further note that while she claims monthly expenses of $6,829, nearly $1,800 is attributable to business expenses and taxes. She further lists monthly car payments of $1,000, yet shows no loan balance on her 1995 Mazda. Her mortgage, property tax, insurance and maintenance costs are approximately $2,000 per month; half of the actual living expenses she lists in her income statement. Given that her children no longer live at home and Ms. Martin professes to live alone, we do not find the chancellor in error for finding that "her need for such a large and expensive home has not been explained to the satisfaction of the Court." Further, the chancellor's finding of facts mirrors the evidence presented in the record. His decision is justified by the evidence contained therein.

II. Ms. Martin's Relationship with Norm Anderson
¶ 14. Despite her contention that her expenses far exceed her available income, the gravamen of Ms. Martin's argument is that the chancellor erred in finding that her relationship with Norm Anderson was a "de facto marriage," warranting the termination of Dr. Martin's financial obligations to her. Specifically, the chancellor found as follows:
Linda has attempted to structure her relationship with Norm so that she can receive the benefit of the relationship with some semblance of respectability and at the same time to continue her alimony payments from Ben. Linda has been careful not to let Norm to be found living with her in her home or to be clearly receiving from her or giving to her, financial support. However the Court finds that the "substance over form" is that Linda and Norm are receiving from and giving to each other, mutual support within the meaning of the law in these type cases. The in kind services that Linda receives from Norm is not insubstantial. Home-maker in kind services have been held to entitle a non-employed spouse to a presumption of entitlement to one half of all marital assets.
The chancellor expressly rejected the credibility of Ms. Martin's assertion, which she also makes in this appeal, that she and Anderson have not married because she is emotionally unready for a second marriage. Indeed, she admitted on cross-examination that she has not remarried because she needs the financial support Dr. Martin has been providing.
¶ 15. Periodic alimony is subject to modification and ceases upon the wife's remarriage or upon the husband's death. *1136 McDonald v. McDonald, 683 So.2d 929, 931 (Miss.1996). Likewise, where the recipient spouse has elected to cohabit with a third party rather than enter into marriage, the Mississippi Supreme Court has found that there exists a presumption of mutual support altering her financial needs which may warrant modification or termination of alimony. Scharwath v. Scharwath, 702 So.2d 1210, 1211 (Miss.1997). See also Hammonds v. Hammonds, 641 So.2d 1211, 1216-17 (Miss.1994)(alimony may be modified or terminated when recipient spouse is supporting or is supported by a third party). As the chancellor noted in his opinion, these decisions follow the modern trend of emphasizing not the moral aspect of cohabitation but the changes in financial needs it may bring about. There is substantial evidence in the record to support the chancellor's finding that Ms. Martin and Anderson have provided "mutual support" to one another and, in particular, his conclusion that "[t]he in kind services that Linda receives from Norm is not insubstantial." It is clear from the record that Anderson provides a wide variety of domestic services ranging from yard work to errands. He further gives her substantial discounts on her clothing and make-up purchases. In addition to the many checks she has written to Anderson, Ms. Martin provides Anderson with a luxurious home in which to visit, entertain his son, eat dinner and do his laundry. The couple uses her car because it is nicer and newer than his. It is clear from the record that Anderson benefits from Dr. Martin's largesse and Ms. Martin benefits financially from her relationship with Anderson.
¶ 16. There further is substantial evidence in the record to support the chancellor's finding that Ms. Martin has structured her relationship with Anderson in an attempt to circumvent the appearance of cohabitation so as to continue her alimony and maintain an aura of respectability. Thus, the fact that she and Anderson have maintained separate residences does not undermine the chancellor's findings. On one hand, Ms. Martin wears the engagement ring Anderson gave her and has told friends that they plan to marry "next year." On the other hand, the couple denies any immediate plans to marry. At trial, she admitted that she and Anderson had not married because she needs the financial support provided by the alimony she receives from Dr. Martin. "Where an alimony recipient spouse purposefully avoids marriage merely to continue receiving alimony, equity should not require the paying spouse to endure supporting such misconduct." Anderson v. Anderson, 692 So.2d 65, 72 (Miss.1997). Based on Ms. Martin's own testimony, the chancellor properly found that Dr. Martin should no longer be required to provide support to his former wife. His decision enures to Ms. Martin's benefit as well. As he stated, "[c]essation of alimony frees Linda to live her life as she pleases without comment or criticism from Ben."

III. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD ATTORNEY FEES
¶ 17. The award of attorney fees and costs in divorce cases is within the sound discretion of the chancellor. Brooks v. Brooks, 652 So.2d 1113, 1120 (Miss.1995). When the wife "is financially able to pay her attorney, an award of attorney's fees is not appropriate." Sarver v. Sarver, 687 So.2d 749, 755 (Miss.1997); Martin v. Martin, 566 So.2d 704, 707 (Miss.1990). The chancellor found that Ms. Martin had a net worth in excess of $900,000 as well as a substantial earning potential since completing her law degree. We therefore cannot say that she is without resources to pay her attorney. The chancellor correctly denied her request for attorney fees.

CONCLUSIONS
¶ 18. There is substantial evidence in the record to support the chancellor's findings that Ms. Martin has a sizable net worth as well as the education and professional *1137 training to provide her with a substantial earning potential. Periodic alimony was no longer necessary. The evidence in the record further supports the chancellor's finding that Ms. Martin's relationship with Norm Anderson was such that equity does not require Dr. Martin to continue supporting her. The chancellor properly granted Dr. Martin's motion to terminate his periodic alimony obligations and denied Ms. Martin's request for attorney fees. Accordingly, we affirm the decision of the chancery court.
¶ 19. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.