## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00884-COA

**SALATHIEL PRESLEY AND LARRY MOOREHEAD**                                     **APPELLANTS**

**v.**

**RONALD W. STOKES AND BILLY W. HEARD**                                       **APPELLEES**

DATE OF JUDGMENT:            09/27/2014
TRIAL JUDGE:                 HON. RAY HILLMAN MONTGOMERY
COURT FROM WHICH APPEALED:   WINSTON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:     STEVEN DETROY SETTLEMIRES
ATTORNEY FOR APPELLEES:      JOHN DICKSON MAYO
NATURE OF THE CASE:          CIVIL - REAL PROPERTY
TRIAL COURT DISPOSITION:     DISMISSED WITH PREJUDICE THE
                             APPELLANTS' PETITION AGAINST THE
                             APPELLEES
DISPOSITION:                 REVERSED AND REMANDED - 11/22/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., BARNES AND CARLTON, JJ.

### CARLTON, J., FOR THE COURT:

¶1.     Salathiel Presley and Larry Moorehead[1] (collectively, the Appellants) appeal the

Winston County Chancery Court's judgment dismissing with prejudice their petition

asserting an adverse-possession claim against Ronald Stokes and Billy Heard (collectively,

the Appellees).  The Appellants assert that the chancellor erred by applying an incorrect legal

standard and by finding that they failed to prove all the elements of their adverse-possession

---

[1] Although the Appellant's name appears as "Moorhead" a few times in the record,
we use the spelling "Moorehead," which appears more prevalently throughout the record and
is used by both parties in their appellate briefs.

claim by clear and convincing evidence. *See Scott v. Anderson-Tully Co.*, 154 So. 3d 910, 916 (¶14) (Miss. Ct. App. 2015) (stating that a claimant must prove each element of his adverse-possession claim by clear and convincing evidence).

¶2. Because we find that the chancellor applied an incorrect legal standard in disposing of the Appellants' petition, we reverse the chancellor's judgment and remand the case for further proceedings consistent with this opinion.

**FACTS**

¶3. Pursuant to a warranty deed recorded on October 1, 1985, the heirs of the Cannon family conveyed approximately sixty acres of real property to the Appellants. The 1985 warranty deed did not convey four parcels of the Cannon family's land. The excepted parcels totaled approximately thirteen acres. By a second warranty deed recorded on November 30, 2006, the Cannon-family heirs conveyed another parcel of land to the Appellees. The Appellees subsequently conveyed part of their land to Marcus and Susan Yates. On December 27, 2007, the Yateses executed a land deed of trust in favor of Renasant Bank, with the deed secured by their portion of the real property.

¶4. Following the 2006 conveyance to the Appellees, a dispute arose between the parties as to the location of the boundary line between their properties. The Appellants asserted ownership over the disputed property through adverse possession. On January 30, 2009, the Appellants filed a petition in chancery court against the Appellees, the Yateses, and Renasant Bank. The Appellants' petition asked the chancellor to grant the following relief: (1) to quiet title of the disputed property in their favor due to adverse possession; (2) to find the

Appellees' conveyance to the Yateses fraudulent; (3) to issue both a temporary and a permanent injunction; (4) to award damages and attorney's fees; and (5) to grant declaratory relief.

¶5.     On March 27, 2009, Renasant Bank filed its answer to the petition, and on April 28, 2009, the Appellees and the Yateses filed their answer, defenses, and counterclaim to the petition. On June 3, 2009, the Appellants filed their answer to the counterclaim. On September 24, 2010, pursuant to an agreed order, the chancellor entered a judgment dismissing with prejudice the claims against the Yateses and Renasant Bank.

¶6.     On September 15, 2014, the chancellor held a trial on the Appellants' claims against the Appellees. During the bench trial, Moorehead testified and described the disputed property as open pastureland and hayland with a few small trees at the back of the property. According to Moorehead's testimony, he believed that he and Presley owned the property. He stated that this belief continued from 1985 until the Appellees claimed ownership over the parcel in 2006. Moorehead testified that he lived right across the road from the disputed property and had never seen the Cannon family use the property. However, he testified that Presley had put cattle on the disputed property around 1985 and 1986. Moorehead further testified that he gave Joey Partridge, his niece's husband, permission to use the disputed land, and he said Partridge cut hay and had cattle on the property from about the mid-1990s to 2006. In addition, Moorehead said that Presley gave permission to others to cut hay on the property.

¶7.     Like Moorehead, Presley testified that he thought he and Moorehead owned the

3

property at issue. Presley stated that, at two different times, he kept cattle on the property. He testified that the first time was in the late 1980s and that the second time was in 2008. Even though the Appellees had received their deed to the property in 2006, Presley stated that he and the Appellees never had a conversation about his cattle being on the property in 2008. Presley further testified that he did not ask the Appellees for permission to put the cattle on the land in 2008 because he believed that he and Moorehead owned the property.

¶8.     Presley testified that he repaired the fence around the property and clipped the grass when needed. He stated that he and Moorehead had also given others permission throughout the years to cut the hay on the property. He testified that no one cut hay or clipped grass on the property without receiving permission from him or Moorehead. Presley further stated that the property never went more than a year without having the hay cut once or twice or the grass clipped two or three times.

¶9.     In addition to the Appellants, Doyce Johns and Marvin Hughes testified. Both men stated that they had received permission from the Appellants to cut hay on the disputed property. Johns testified that, about fifteen years ago, Presley gave him permission to cut hay on the property twice in the same year. Hughes stated that he believed Presley's nephew, Michael Presley, had contacted him about cutting hay. Hughes testified that he cut hay twice a year for several years on the property around 2007 to 2009.

¶10.    Moorehead's niece, Pam Reel, also testified. Reel stated that she lived in a house next to the disputed property for thirteen years. Reel testified that Presley and Partridge kept cows on the property and that she and her husband received the Appellants' permission to keep

4

horses on the property. Reel further testified that anyone who wished to hunt or fish on the property or to otherwise use the property first asked the Appellants for permission. Reel testified that people were always cutting hay on the property, perhaps even on a monthly basis, but she stated that she never knew the individuals personally because they dealt directly with the Appellants. According to Reel, during the thirteen years that she lived next to the property, the Appellants were always using the property in some manner, and she stated that anyone who wanted to use the property always asked the Appellants for permission.

¶11. After the Appellants presented their case-in-chief, the Appellees moved to dismiss the claims against them under Rule 41(b) of the Mississippi Rules of Civil Procedure. The chancellor entered a judgment in the matter on September 30, 2014. The chancellor found that, at the time the Appellants filed their 2009 petition asserting their adverse-possession claim, the Appellees had only owned the disputed real property for about two years. The chancellor further found that the Appellants had failed to name the Appellees' predecessors in title as parties to the case. In dismissing the petition with prejudice, the chancellor further concluded that the Appellants failed to prove each element of their adverse-possession claim by clear and convincing evidence. Specifically, the chancellor stated that the Appellants "failed to prove by clear and convincing evidence that their possession of the disputed property . . . had [been] continuous and uninterrupted for a period of ten years."

¶12. The Appellants filed an unsuccessful motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. Aggrieved by the chancellor's judgment, they filed

5

a timely appeal to this Court.

## STANDARD OF REVIEW

¶13.    A Rule 41(b) motion to dismiss "applies to cases tried by a judge sitting without a jury and requires the judge to view the evidence fairly." *In re Last Will & Testament of Bowling*, 155 So. 3d 907, 911 (¶18) (Miss. Ct. App. 2014) (citation omitted). "When considering a Rule 41(b) motion to dismiss, the judge must deny the motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case." *Id.* (citation and internal quotation marks omitted). "We review Rule 41(b) dismissals under the deferential substantial-evidence/manifest-error standard. Under this standard, we must affirm unless the chancellor applied an incorrect legal standard or made manifestly wrong or clearly erroneous factual findings." *Id.* at (¶21) (internal citations omitted).

¶14.    As we recently stated:

> Where a chancellor misperceives the correct legal standard to be applied, the error becomes one of law, and this Court will not give deference to the chancellor's findings. Instead, we review questions of law de novo. [A]fter review, if warranted, we will reverse the chancellor because of an erroneous interpretation or application of the law.

*Ward v. Harrell*, 186 So. 3d 410, 412 (¶12) (Miss. Ct. App. 2016) (internal citations and quotation marks omitted).

## DISCUSSION

¶15.    The Appellants argue that the chancellor erred by dismissing their petition against the Appellees. They first assert that the chancellor applied an erroneous legal standard when he

6

found that they were required to name as defendants the Appellees' predecessors in title. The Appellants further contend that the chancellor erroneously concluded that they failed to prove all the elements of their adverse-possession claim by clear and convincing evidence.

¶16. In their appellate brief, the Appellees concede that, based on this Court's recent holding in *Rester v. Greenleaf Resources Inc.*, 160 So. 3d 743, 748 (¶16) (Miss. Ct. App. 2015), the chancellor applied an erroneous legal standard in dismissing the Appellants' petition. In *Rester*, the current title holder of the disputed land had held title to the land between eight and nine years when the appellants filed their complaint alleging adverse possession of part of the land. *Rester*, 160 So. 3d at 744 (¶3). On appeal, this Court found that, although the chancellor correctly considered the elements of adverse possession, she erred when she limited her analysis to only the time period that the current title holder had possessed the land. *Id.* at 748 (¶16). In *Rester*, we reversed the chancellor's judgment and remanded the case after finding that further inquiry was needed to determine whether the appellants' family had adversely possessed the disputed property at any point prior to the current title holder's purchase of the land. *Id.* at 748-49 (¶¶16-18).

¶17. Pursuant to our holding in *Rester*, we agree with the parties here that the chancellor erroneously applied the relevant law when he only focused on the period of time that the Appellees held title to the real property at issue. *See id.* As the chancellor acknowledged, the Appellees had only owned the disputed property for about two years when the Appellants filed their petition and asserted their adverse-possession claim. Because a claim of adverse possession must be for a continuous and uninterrupted period of ten years, our inquiry into

7

the Appellants' claim must also include the time period prior to the Appellees' purchase of the property. *See id.*

¶18. While acknowledging that the chancellor applied an erroneous legal standard in this case, the Appellees still contend that the chancellor correctly dismissed the petition because the Appellants failed to prove the necessary elements of their claim by clear and convincing evidence. However, we find the chancellor's application of an erroneous legal standard to be dispositive. We therefore reverse the chancellor's judgment dismissing the Appellants' petition with prejudice, and we remand the case to the chancery court. On remand, the chancellor should conduct further proceedings to determine whether the Appellants adversely possessed the property at issue at any point prior to or overlapping the Appellees' purchase of the land. *See id.*

¶19. **THE JUDGMENT OF THE WINSTON COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**