CARLTON, J., DISSENTING:
 

 ¶ 36. The majority finds that the chancellor did not clearly or manifestly err by dismissing Adam's petition to terminate his periodic-alimony obligation to Karen after determining that Adam failed to meet his burden of proof. I disagree, and I respectfully dissent. I find that the record shows that the chancellor erred in dismissing Adam's petition under Rule 41(b) and awarding Karen attorney's fees; accordingly, I would reverse the chancellor's judgment.
 

 ¶ 37. The record reflects that Adam filed a petition in chancery court to terminate his periodic-alimony obligation to his ex-wife Karen. After Adam presented his evidence and testimony at the hearing, Karen moved to dismiss his petition under Rule 41(b) for failure to establish a prima facie case. The chancellor granted the dismissal, and Adam appealed. On appeal, Adam argued the chancellor erred (1) by denying his request to terminate his periodic-alimony obligation, and (2) by ordering him to pay one-half of Karen's attorney's fees.
 

 ¶ 38. Adam and Karen divorced in 2002. At the time of their divorce, the parties had four minor children. Pursuant to their property-settlement agreement, Adam agreed to pay Karen $15,000 a month in periodic alimony. He also agreed to pay monthly child support and to meet certain other financial needs for the children.
 

 ¶ 39. On August 25, 2015, Adam filed a "Petition for Modification," which expressly sought the termination of his periodic-alimony payments to Karen. At the time Adam filed his petition, the parties' four children all had reached the age of majority. In his petition, Adam argued the chancellor should terminate his periodic-alimony obligation because the parties had experienced a material change in circumstances. Adam alleged that the parties' children all had reached the age of majority and that he had continued to pay a substantial amount of alimony to Karen each month although Karen (1) now possessed substantial savings and investments; (2) was well educated and capable of supporting herself; (3) enjoyed a life of leisure without gainful employment; and (4) was in a de facto marriage. Karen filed a response and counterclaim to Adam's petition. In addition to her other requested relief, Karen asked the chancellor to dismiss Adam's petition and to award her reasonable attorney's fees.
 

 ¶ 40. At a hearing on June 30, 2016, Adam testified that at the time of the parties' divorce, they lived in a home with a $10,000 monthly mortgage payment. In the divorce proceedings, Karen received
 the marital home and the accompanying mortgage payment. Adam testified he wanted his children to remain in their home. As a result, he said he agreed to give Karen $15,000 a month in alimony so she could pay the mortgage and still have funds for the rest of the month. However, Adam stated that Karen decided to downsize to a smaller home six months after the divorce. As a result, Adam paid Karen $170,000 of equity for her share of the marital home.
 

 ¶ 41. According to Adam, at the time of the hearing Karen lived in a paid-for $600,000 home and owned a twenty-five percent interest in homes located in Delaware, South Carolina, and Puerto Rico. Adam also testified that, since their divorce, Karen exclusively had dated Steven Dobel, who owned a house about a mile from her in the same neighborhood. Adam stated that he and Karen had gone on double dates with Dobel and his wife before both couples divorced in 2002. Although Adam testified that Karen and Dobel did not spend their nights together, he stated that he had learned they spent most of their days together and took naps in the same bed before separating at night. Adam further testified that Dobel had given Karen a diamond ring several years before, which Karen had worn on her ring finger, and that Karen and Dobel saw each other on a daily basis and often vacationed together. Adam also stated that Karen and Dobel bought a home together in Maine but that, after Adam confronted Karen about the purchase, Karen sold her interest in the home to Dobel. According to Adam, Karen had obtained a college degree, was in good health, and was capable of gainful employment. However, Adam testified that Karen had not worked since before the parties had their children.
 

 ¶ 42. On cross-examination, Adam admitted that he possessed no firsthand knowledge regarding his claims that Karen and Dobel cohabited and were in a de facto marriage. Instead, Adam conceded his testimony was based on his assumptions, Karen's deposition testimony, and what his children, his private investigator, and Dobel's ex-wife had told him. Adam further admitted that, although he had subpoenaed Karen's financial records, he had no actual proof that she and Dobel financially supported one another. Adam also admitted that Karen and Dobel each owned their own homes.
 

 ¶ 43. Adam presented no other witnesses to support his claims. At the close of Adam's case-in-chief, Karen moved to dismiss his petition under Rule 41(b). Karen argued that Adam's testimony alone, which was based solely upon hearsay and assumptions rather than personal knowledge, failed to constitute sufficient evidence to establish a prima facie case of a de facto marriage, cohabitation, or mutual financial support between her and Dobel. In a bench ruling, the chancellor granted Karen's motion to dismiss.
 

 ¶ 44. On July 11, 2016, the chancellor entered a final judgment that incorporated the factual findings and legal conclusions from her bench opinion. In dismissing Adam's petition with prejudice under Rule 41(b), the chancellor determined that Adam provided only assumptions and hearsay to support his claims, and she found such evidence insufficient to meet his burden of proof to show a material change in circumstances. The chancellor concluded that Adam failed to show Karen structured her relationship with Dobel so that they were committed to one another like a married couple, while remaining legally unmarried, to receive the benefit of alimony. The chancellor further found that Adam failed to show Karen deliberately had avoided remarriage merely to continue to receive alimony. However, the chancellor
 issued no findings as to whether Adam met his burden of proof to show a material change in circumstances as a result of Karen no longer owing $10,000 a month in mortgage payments and the children all reaching the age of majority.
 

 ¶ 45. The chancellor also found that, although Karen could pay a portion of her attorney's fees, she presented sufficient evidence to entitle her to recover some of the money she expended in defending against Adam's petition. As a result, the chancellor ordered Adam to pay Karen $13,935.50, which amounted to one-half of her attorney's fees and expenses.
 

 ¶ 46. Rule 41(b) provides that "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." When considering a dismissal based on the plaintiff's failure to show a right to relief, "the judge must consider the evidence fairly, rather than in the light most favorable to the plaintiff."
 
 Pittman v. Pittman
 
 ,
 
 195 So.3d 727
 
 , 732 (¶ 12) (Miss. 2016) (citation omitted). "[T]he judge must deny the motion to dismiss only if the judge would be obliged to find for the plaintiff if the plaintiff's evidence were all the evidence offered in the case."
 
 Presley v. Stokes
 
 ,
 
 205 So.3d 619
 
 , 622 (¶ 13) (Miss. Ct. App. 2016) (citation omitted). This Court will reverse a Rule 41(b) dismissal "only if the [chancellor's] findings are not supported by substantial evidence, or the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard."
 
 Pittman
 
 ,
 
 195 So.3d at 732
 
 (¶ 12) (citations omitted). However, this Court reviews questions of law de novo.
 

 Id.
 

 ¶ 47. Adam asserts that the chancellor erred by denying his request to terminate his periodic-alimony payments because the parties experienced a material change in circumstances that justifies the termination of periodic alimony. In support of his argument, Adam claims that Karen engaged in a de facto marriage and cohabited with Dobel. Adam further claims that Karen possessed substantial savings and investments, was well educated and capable of supporting herself, enjoyed a life of leisure without gainful employment, and the parties' children all had reached the age of majority.
 

 ¶ 48. In determining whether to modify a periodic-alimony award:
 

 [C]hancellors must first determine if an unforeseeable and material change in circumstances occurred since entry of the initial divorce decree. If not, modification is not permitted.
 

 However, if a substantial unanticipated change has in fact occurred, the chancellor should then consider the
 
 Armstrong
 

 [
 

 2
 

 ]
 
 factors to determine the appropriate amount of alimony. In evaluating these factors when deciding whether to modify periodic alimony, chancellors should compare the relative positions of the parties at the time of the request for modification in relation to their positions at the time of the divorce decree. As with any alimony consideration, the chancellor must consider the wife's accustomed standard of living, less her own resources, as well as the husband's ability to pay.
 

 Peterson v. Peterson
 
 ,
 
 129 So.3d 255
 
 , 257 (¶¶ 7-8) (Miss. Ct. App. 2013) (internal citations and quotation marks omitted) (footnote added).
 

 ¶ 49. Adam argues that the chancellor erred by not terminating his periodic-alimony
 obligation because Karen and Dobel cohabit and are engaged in a de facto marriage. I find that the record contains substantial credible evidence to support the chancellor's determination that Adam failed to prove cohabitation and a de facto marriage between Karen and Dobel.
 
 See
 

 Pittman
 
 ,
 
 195 So.3d at 732
 
 (¶ 12) ;
 
 Coggins
 
 , 132 So.3d at 643 (¶ 29). However, although the record reflects no proof of cohabitation and no presumption of a de facto marriage between Karen and Dobel, the record does reflect that Adam presented sufficient evidence to survive a Rule 41(b) dismissal by showing his "right to relief" in the matter.
 
 See
 

 Pittman
 
 ,
 
 195 So.3d at 732
 
 (¶ 12).
 

 ¶ 50. In
 
 Martin v. Martin
 
 ,
 
 751 So.2d 1132
 
 , 1133 (¶ 3) (Miss. Ct. App. 1999), the divorce judgment ordered Ben to pay his ex-wife Linda $5,000 a month in periodic alimony. After the divorce, Linda sold the marital home "and built a 3,300 square foot house in an affluent neighborhood in Brentwood, Tennessee."
 

 Id.
 

 at (¶ 4). She also attended and graduated from law school in Nashville, and she became licensed to practice law in Tennessee in 1996.
 

 Id.
 

 While in Tennessee, Linda met Norm Anderson.
 

 Id.
 

 at (¶ 5). The two became involved in a long-term relationship and eventually got engaged.
 

 Id.
 

 Linda wore a diamond engagement ring from Norm, and the couple told friends they planned to marry "next year."
 

 Id.
 

 At the hearing on Ben's motion to modify alimony, Linda and Norm refuted any immediate plans to marry.
 

 Id.
 

 Linda "admitted, however, that she and [Norm] had not married because she need[ed] the financial support provided by the alimony [she] received from [Ben]."
 

 Id.
 

 ¶ 51. Although Linda and Norm maintained separate residences, Norm had his own key and garage-door opener to Linda's home.
 

 Id.
 

 at 1133-34
 
 (¶ 6). Though Norm occasionally spent the night at Linda's home, he ate regular meals there, ran errands for her, and performed yard work and other household tasks.
 

 Id.
 

 at 1134
 
 (¶ 6). Linda and Norm vacationed together, spent holidays together, exchanged gifts, and attended church together.
 

 Id.
 

 Using his employee discount, Norm purchased Linda clothing and cosmetics from the department store where he worked.
 

 Id.
 

 Meanwhile, Linda wrote checks to Norm over a three-year span that amounted to over $11,000.
 

 Id.
 

 Finding that Linda had engaged in a de facto marriage with Norm that allowed her "to receive the benefits of the relationship with some semblance of respectability and at the same time to continue her alimony payments from Ben[,]" the chancellor terminated Ben's periodic-alimony obligation.
 

 Id.
 

 at 1134
 
 (¶ 8).
 

 ¶ 52. On appeal in
 
 Martin
 
 , this Court found substantial record evidence to support the chancellor's finding that Linda and Norm provided mutual support to one another through monetary gifts and in-kind services.
 

 Id.
 

 at 1136
 
 (¶ 15). Furthermore, based on Linda's admission "that she and [Norm] had not married because she need[ed] the financial support provided by the alimony she receive[d] from [Ben,]" we affirmed the chancellor's finding that Linda "structured her relationship with [Norm] in an attempt to circumvent the appearance of cohabitation so as to continue her alimony[.]"
 

 Id.
 

 at (¶ 16).
 

 ¶ 53. In the present case, Adam presented sufficient evidence to survive a Rule 41(b) dismissal by showing his "right to relief" in the matter.
 
 See
 

 Pittman
 
 ,
 
 195 So.3d at 732
 
 (¶ 12). Specifically, Adam submitted sufficient evidence to show that Karen "structured her relationship with [Dobel] in an attempt to circumvent the appearance of cohabitation so as to continue her alimony[.]"
 
 Martin
 
 ,
 
 751 So.2d at 1136
 
 (¶ 15) ;
 
 see also
 

 Wallace v. Wallace
 
 ,
 
 12 So.3d 572
 
 , 576 (¶ 19) (Miss. Ct. App. 2009)
 

 (in determining whether mutual support existed in contact of de facto marriage, the chancellor should consider "in-kind service contributions."). Since Adam presented sufficient evidence to survive dismissal under Rule 41(b), the proper remedy is to reverse the chancellor's dismissal and remand this case to the chancellor so that the trial may continue.
 
 Pittman
 
 ,
 
 195 So.3d at 732
 
 (¶ 12) (citations omitted) (We reverse a Rule 41(b) dismissal "only if the [chancellor's] findings are not supported by substantial evidence, or the chancellor abused his discretion, was manifestly wrong, or applied an erroneous legal standard.").
 
 [3]
 
 Since I would reverse the chancellor's judgment dismissing Adam's petition and awarding attorney's fees to Karen and remand this case for further proceedings consistent with this opinion, I respectfully dissent from the majority's opinion.
 

 LEE, C.J., IRVING, P.J., AND TINDELL, J., JOIN THIS OPINION.
 

 See
 

 Armstrong v. Armstrong
 
 ,
 
 618 So.2d 1278
 
 , 1280 (Miss. 1993).
 

 See also
 

 In re Adoption of D.N.T.
 
 ,
 
 843 So.2d 690
 
 , 711 (¶ 50) (Miss. 2003) (citing
 
 Century 21 Deep S. Props., Ltd. v. Corson
 
 ,
 
 612 So.2d 359
 
 , 369 (Miss. 1992) ) ("In considering a motion to dismiss, the [trial] judge should consider 'the evidence fairly, as distinguished from in the light most favorable to the plaintiff,' and the court should dismiss the case if it would find for the defendant.");
 
 Ladner v. Stone Cty.
 
 ,
 
 938 So.2d 270
 
 , 273 (¶ 10) (Miss. Ct. App. 2006).